SCHMIDT, Appellant, vs. MODERN WOODMEN OF AMERICA, Respondent.

*December 10, 1892 — January 10, 1893.*

*Life insurance: Mutual benefit society: Assessments: Waiver of forfeiture.*

1. A member of a mutual benefit society was in default for nonpayment of an assessment, and the right to any benefits under his certificate was thereby suspended. He remained a member of the society, however, and was entitled to a restoration of his insurance on payment of arrearages within three months, if his health was not impaired. The rules required the clerk to send notice of each assessment to every member. *Held*, that notice to the member in default (then in good health) of a subsequent assessment, calling his attention, also, to the nonpayment of the assessment in question, was not a waiver of the suspension of the right to benefits under his certificate.

2. A custom of allowing members in good health to pay assessments after they were due, is not a waiver of such suspension in a case where, when the attempt was made to pay the assessment, the member was sick and near to death.

APPEAL from the Circuit Court for *Winnebago* County.

The defendant is a fraternal benefit society, and as such issues certificates of life insurance to its members, entitling

them, while in good standing in the fraternity, to partici-
pate in its benefit fund, in a sum not exceeding an amount
specified in the certificate. The organization of the frater-
nity is a head camp, supposed to be the supreme head of
the order, and numerous local camps. Casper Schmidt, the
husband of the plaintiff, was a member of Pinery Camp
No. 378, located at Oshkosh, and held a benefit certificate
of life insurance therein for not exceeding $3,000, payable
at his death (if he was then in good standing in the order)
to his wife, the plaintiff.

The rules of the defendant provided for making assess-
ments upon members to pay death losses, of which notice
should be given each member before the 10th day of every
calendar month, by the local clerk of each order. The
members are designated in the constitution and by-laws of
the order as " Neighbors." One of the rules is that each
assessment is payable before the 1st day of the ensuing
month, if notice thereof was given before the 10th day of
the preceding month; and that, if the member fails to pay
the same before the 1st day of the following month, he
stands suspended, as far as the benefits of the fraternity are
concerned, and during such suspension, although he remains
a fraternal member, his benefit certificate is void. Another
rule is as follows: " If all arrearages of every kind are paid
in three months, and the clerk is satisfied that his health is
not impaired, a neighbor shall thereby be restored, and his
ownership certificate be made binding as soon as payment
is received and recorded by the clerk. If the clerk has rea-
son to believe that the health of the neighbor is impaired,
he shall submit the matter to the camp, who shall decide
the matter by a two-thirds vote."

An assessment for death losses was regularly made on or
about April 1, 1889, of $1.60, that being the rate of assess-
ment specified in the benefit certificate of Schmidt, and due
notice thereof was given Schmidt before April 10th. The

assessment was not paid. On May 7, 1889, Schmidt was taken seriously ill, became worse, and died on the 23d of the same month. Two days before his death a relative offered to pay the assessment, and another offer was made later to the clerk of the local camp; but the latter refused to accept payment, for the reason that he knew Schmidt was sick. The money was left with him, however, as a friend, to abide the action of the local camp. The clerk submitted the matter to the camp, and on the day of Schmidt's death the camp refused to receive the money, and the clerk returned it to the person who deposited it with him. The assessment in question is designated as No. 3. On or about May 1st another assessment was made for the same amount, known as No. 4. On that day the clerk notified Schmidt of assessment No. 4, and called his attention to the fact that assessment No. 3 remained unpaid.

On the foregoing facts the circuit court directed a verdict for the defendant, which was returned accordingly. A motion for a new trial was denied, and judgment for defendant entered pursuant to the verdict. The plaintiff appeals from the judgment.

*J. C. Kleist* and *M. C. Phillips,* for the appellant, contended, *inter alia,* that a forfeiture is waived by subsequent recognition of the validity of the policy by requiring the insured to do some act or incur some trouble or expense. *Jerdee v. Cottage Grove F. Ins. Co.* 75 Wis. 345; *True v. Bankers' L. Asso.* 78 id. 287. Every time a company makes an assessment after the assured has failed to pay a previous one within the time, it waives the forfeiture and admits him to be a member of the company notwithstanding such failure. *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224; *National M. B. Asso. v. Jones,* 84 Ky. 110; Niblock, Mut. Ins. sec. 339; *Shay v. National B. Soc.* 7 N. Y. Supp. 287. The general course of business that led the insured to sup-

pose that the assessment could be paid at any time, after failure to pay within the time, operates as a complete waiver. *Alexander v. Continental Ins. Co.* 67 Wis. 422; *True v. Bankers' L. Asso.* 78 id. 287; *Loughridge v. Iowa L. & E. Asso.* 50 N. W. Rep. 568; *Home Protection v. Avery*, 85 Ala. 348; *McCraw v. Old North State Ins. Co.* 78 N. C. 149; *McCorkle v. Texas B. Asso.* 71 Tex. 149; *Hoffman v. Supreme Council*, 35 Fed. Rep. 252; *Gunther v. New Orleans C. E. M. A. Asso.* 40 La. Ann. 776.

*Humphrey Pierce*, for the respondent, to the point that a custom to waive does not bind if the health of the insured is impaired when payment of back dues is offered, cited *National M. B. Asso. v. Miller*, 85 Ky. 88; *Lewis v. Phœnix L. Ins. Co.* 44 Conn. 89–91.

LYON, C. J.  There can be no doubt that at the time of his death Schmidt was in default to the defendant for non-payment of assessment No. 3, which, by the rules of the defendant fraternity, worked a suspension of any right to benefits under the benefit certificate, unless the defendant or its officers did some act which operates as a waiver of the suspension or forfeiture.  It is claimed on behalf of the plaintiff that sending notice of assessment No. 4, while Schmidt was in default on assessment No. 3, operated as such waiver.  We think otherwise.  It was the duty of the clerk, under the rules, to send such notice to every member, and Schmidt remained a member after such default, although not entitled to benefits while it continued.  The reason is that, being entitled to a restoration of his insurance if within three months he paid his arrearages and his health remained unimpaired, he was entitled to know how much he owed the defendant on all assessments.  He was then in good health, and it was expected by the clerk that he would relieve himself from his default by paying the assessment.  Moreover, Schmidt did nothing, because of

Dowd vs. Chicago, Milwaukee & St. Paul R. Co.

such notice, which subjected him to any expense or inconvenience, or which in any manner changed his rights or his legal relations to the fraternity. Certainly the giving of such notice contains no element of a waiver or estoppel, the same not being inconsistent with the right of the defendant to assert the suspension of the benefit certificate because of Schmidt's default.

It was proved on the trial that a large proportion of assessments were paid after due, and received without objection, and it is argued that a waiver should be implied from this practice; but the difficulty in this position is that no practice is shown of receiving payments of assessments after due in cases where the health of the members paying the same had become impaired. The practice was confined to members in good health, and does not reach the case of Schmidt, who was sick and near death when the attempt was made to pay the assessment.

We see no escape from the conclusion that when Schmidt died the right of his beneficiary in the certificate was suspended because of his default for nonpayment of assessment No. 3 as required by the rule of the fraternity; hence, there being no dispute as to the facts, the court properly directed a verdict for defendant.

*By the Court.*— Judgment affirmed.