AUGUSTA STIEPEL, Appellant, v. THE GERMAN AMERI-
CAN MUTUAL LIFE ASSOCIATION, Respondent.

St. Louis Court of Appeals, November 21, 1893.

1. **Life Insurance**: WAIVER OF FORFEITURE. Waiver differs from
   estoppel in that it depends solely on the intention of the party against
   whom it is invoked.

2. ——: ——: SUFFICIENCY OF EVIDENCE. When the failure of the
   insured does not absolutely avoid his life insurance, but entitles him
   to a reinstatement of it within one year upon payment of the delin-
   quent dues, a showing of good cause and satisfactory proof of good
   health, proof that the insurer, after default but within the year,
   mailed circulars to him advising him of assessments, is not sufficient
   evidence of a waiver of the forfeiture.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED.

*Rassieur & Schnurmacher* for appellant.

A provision in an insurance policy, that it shall
become null and void for nonpayment of premiums,
is for the benefit and protection of the company, and
may be waived by it. *Hanley v. Life Association of
America,* 69 Mo. 383; *Thompson v. Ins. Co.* 52 Mo. 469.
While forfeitures, when legally established, will be
enforced, they are not favored by the law, and the
courts are always ready to seize hold of any circum-
stances that indicate an election to waive the right of
forfeiture. *Hartford, etc. Ins. Co. v. Unsell,* 144 U. S.
439; *Sims v. Ins. Co.* 47 Mo. 54; *Froelich v. Ins. Co.*
47 Mo. 406. The forfeiture of a policy for nonpayment
of premiums or assessments will be deemed waived by
a subsequent recognition, on the part of the insurer, of

its continuing force or validity; such as a notice requesting payment of the overdue premium; a notice of liability on a later assessment; and the like. *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410; *Murray v. Home Benefit Ass'n,* 90 Cal. 402; *Robinson v. Ins. Co.,* 18 Hun, 395; *Mut. Life Ins. Co. v. French,* 30 Ohio St. 240; *Roby v. Ins. Co.* 120 N. Y. 510; *Martin v. Equitable Acc. Ass'n,* 41 N. Y. S. 77; *Titus v. Ins. Co.,* 81 N. Y. 410; *Elmer v. Mut. Benefit Life Ass'n,* 47 N. Y. S. 35; *Stylow v. Ins. Co.,* 69 Wis. 224.

*Chester H. Krum* and *Albert Blair* for respondent.

Forfeitures because of nonpayment of premium when due upon life policies are not regarded with the same disfavor as those arising from breaches of other conditions of the insurance. *New York Life Ins. Co. v. Statham,* 93 U. S. 24; *Thompson v. Ins. Co.,* 104 U. S. 252. The assured was not led by a course of dealings to believe that he could pay at any time whether he was sick or well. The question presented by the appellant's case is merely whether the assured was restored by the respondent from a condition of voluntary default to one of full rights as a member or policy holder. It was manifest that he was not so restored. *Lantz v. Ins. Co.,* 159 Pa. St. 546; *Marvin v. Ins. Co.,* 85 N. Y. 282. The receipt of premium which is overdue, on condition that assured is in good health, is not a waiver. So the sending of circulars is not a recognition of membership in the sense of a waiver of forfeiture for nonpayment of premiums. The company being a mutual benefit association, it was even its duty to advise a suspended member of condition of the association. *Ronald v. Mut. Reserve,* 132 N. Y. 378; Bacon on Benefit Societies, sec. 432; *Schmidt v. Modern Woodmen,* 54 N. W. Rep. 264. The cases cited by the appellant do not sustain her position.

ROMBAUER, P. J.—The plaintiff sued to recover $2,000 as beneficiary of a life insurance policy or certificate, issued by the defendant on the life of her husband. The petition states the contract of insurance, death of the assured, and a general compliance with the provisions of the policy, and prays judgment.

The answer sets up a number of defenses, of which, however, for the purpose of deciding the point arising on this appeal, only the following one is material:

"The said defendant admits that on the twenty-second day of August, 1889, said Julius R. Stiepel, on his written application thereto, was admitted as a member of this association, and that, on payment in cash of the first fixed annual premium, to-wit, $6, by said Stiepel, and on his delivery to defendant of his promissory note for the first four quarterly mortuary payments chargeable on his policy, and on his promise thereafter annually, viz., on the twenty-second day of August in each year, to pay the fixed premium of $6, and to pay all quarterly mortuary calls as they should severally become due, said certificate of membership or policy of insurance for $2,000 on the life of said Stiepel, payable to plaintiff, was issued by defendant to said Stiepel.

"Defendant avers that, by the terms and conditions of said policy, and more particularly by special stipulation number three thereof, and by the terms and conditions of said application, which, by the terms of said policy, were made a part thereof, said certificate was issued and received upon condition that, if any of the payments stipulated therein to be made should not be paid when due at the home office of this association, in the city of Burlington, Iowa, or to an authorized agent of the association furnished with a receipt

·by its president or secretary; then, in that case, said certificate should be *null and void, and all payments made thereupon should be forfeited.*

"Defendant avers that Julius R. Stiepel failed to pay, on or before the day it became due, the second annual fixed premium on his said policy, viz:, the sum of $6, which became due and payable on the twenty-second day of August, 1890, although duly notified of the maturity of said premium, and that, thereby, under the special conditions aforesaid said policy became null and void; but defendant avers that, under the provision of section 4, article 12, of the constitution of the association, and which is specially referred to in said application, said section being as follows, viz: "Sec. 4. *Any member lapsing, his certificate may be reinstated in the discretion of the executive committee at any time within one year for good cause shown upon satisfactory proof of good health, and payment of all delinquent dues and assessments;"* there remained to said Stiepel the privilege of being reinstated to membership and to the benefit of his policy, and the payments thereon, by making at any time within one year of said default an application therefor to the executive committee of the company, by supplying satisfactory proof of health and by paying all delinquent dues and assessments.

"Defendant avers that said Stiepel, having made default, as aforesaid, to pay said second annual premium on the twenty-second day of August, 1890, continued in default for a long time, to-wit, the space of ten weeks, and until he received bodily injuries or became affected with disease such as precluded his restoration to membership under the terms of said section 4, and that he at no time after having made said default made an application to be restored upon the terms of said section 4,"

The reply denies the affirmative matter of the · answer, and pleads the following by way of waiver of the conditons relied upon by the defendant:

"Further replying to said answer, plaintiff denies that, on the twenty-second day of August, 1890, the said policy became null and void for failure on the part of the said deceased or this plaintiff to make the payment of $6, as in the answer is averred.

"And plaintiff denies that, because of any failure to make payment on said twenty-second day of August, 1890, the defendant undertook to, or did, declare any forfeiture of said policy. That, on the contrary, the defendant recognized the said policy as in full force and effect at, and long after, said twenty-second day of August, 1890; and waived any right on its part to declare a forfeiture of said policy, if any such right ever existed, by notifying the said deceased on or about November 6, 1890, that a duly authorized collector of defendant would call on him in St. Louis for the purpose of receiving payment from him of the said amount, and by notifying him at or about the said sixth day of November, 1890, that he had until December 5, 1890, to make the said payment.

"And, further replying, plaintiff states that, as a matter of fact, the defendant did receive from said deceased on or about November 30, 1890, and long after the time when defendant now alleges that said policy had become void, payment of said sum of $6, also of the annual expenses, dues, and of all other amounts then due upon said policy, and that defendant received and retained said moneys with full knowledge of the physical conditions of the deceased husband of plaintiff at said time."

Upon the trial the plaintiff gave in evidence the certificate of insurance and the indorsements thereon, which contained the clauses relied on by the defendant,

The plaintiff also gave evidence showing that, when the certificate was issued on August 22, 1889, the defendant accepted from the assured his promissory note, payable on or before December 1, 1889, in payment of his mortuary assessments for one year, and of an admission fee of $6. The plaintiff gave no evidence showing or tending to show that the annual assessment of the assured due August 26, 1890, had been paid. For the purpose of showing a waiver of the forfeiture created by such nonpayment, the plaintiff gave in evidence two circulars issued from the home office of the company, the one having no date and being addressed, "to our members at St. Louis,'" the other bearing date November 1, 1890, and being addressed to the assured by name. There was no direct evidence that the assured had ever seen these papers, or either of them. The plaintiff testified that she did see them before the death of the assured, on November 12, 1890, and that they were found in the yard where they had been carried by a dog. The first of these papers was as follows:

"HOME OFFICE OF THE GERMAN AMERICAN MUTUAL LIFE ASSOCIATION.

"BURLINGTON, IOWA, —————, 189—.

"*To our Members at St. Louis:*

"In consideration of the large membership at St. Louis, and in order to accommodate such of our members as prefer paying to a collector, we have arranged with our collector to call upon you in due time, but, as our membership in your city is already very large, and is growing very rapidly, the collectors cannot call at every place on the very last day of payment, but will be obliged to start about the twentieth of this month, in order to get through by the first of next month. Therefore, we kindly ask you to hold

the money in readiness for them from the twentieth of this month on.

"*Caution.* No one is authorized to pay to a collector, except upon a receipt properly signed by the secretary and stamped with the seal of this association. If paid otherwise, you do so at your *own* risk.

"Yours very truly,

"F. H. A. KOCH,

"Secretary."

The second of these papers was in the following words:

"HOME OFFICE OF THE GERMAN AMERICAN MUTUAL LIFE ASSOCIATION.

"BURLINGTON, IOWA, Nov. 1, 1890.

"Enclosed herewith I hand you notice of your last quarterly payment in this year, and, in doing so, I am pleased to assure the members that this association is in a most prosperous condition; our membership is steadily increasing, and our death losses have been comparatively small.

"Thus far we have secured in an average sixty new applications per month, which I consider a very healthy growth in membership. Since organization up to date, this association has never resisted a single claim, but to the contrary has paid every death claim, always promptly and in full, long before due. In this respect our association stands as the peer in the front rank of all associations in the land. That's the kind of a company for you to insure with and to stand by. When you buy your insurance, you don't want to buy a lawsuit in connection with it, but want to buy pure benefit for your beloved ones.

"Since organization we received over twenty-one thousand applications; out of this from four to six hundred have been either rejected, or have lapsed their

policy, which leaves us still a very nice membership in force.

"We have received in mortuary premiums a total of eighteen thousand and forty-one dollars and forty-seven cents ($18,041.47), out of which we paid for death losses $10,760, leaving a net balance of $7,281.47 still on hand. This is an excellent showing, of which any member may justly feel proud, and the officers feel thankful for the success thus far attained.

"Thanking you most heartily for your prompt payments in the past, I ask you kindly to be especially prompt this time in making your payments before the fifth day of December, which is the last day of grace, as this payment comes in the last month of the year, and should be paid early so that we may be able to close our books at the proper time.

"A complete statement of the full year's business in detail will be sent to each member after the close of the year.

"Although our success thus far attained has been very gratifying, yet, an encouragement on the part of the members will never come amiss; and nothing is more encouraging to the officers and the agents than to know that all the members take an active part in recommending this association to their friends. This is your association as much as it is anybody's; and, whenever you speak a good word to your friends for this association, you are building up your own interest. How easy may each member secure one new applicant per year, and thus double our membership each year. May I not depend upon your earnest endeavor to induce some one to join this association? We will gladly pay you a liberal commission for each new member that you secure. If you don't know how to go at it, write to us for instruction. A good plan is to make a list of the names of your friends, then make it an

object to speak to them at your earliest convenience about our plan of insurance and, etc., etc., and, if you find him favorably impressed, then send us his address and other particulars concerning his view of insurance, etc. Then we will attend to the rest, and, if he be induced in this way to become a member, we will pay you liberally for your trouble.

"Hoping that I may have the pleasure of hearing from you further upon this subject at an early date, I am very truly yours,

' "F. H. A. KOCH,
"Secretary."

The assured died on the thirtieth day of November, 1890. The day preceding his death his attorney sent a postoffice order to the secretary of the company for a sum sufficient to cover the note of the assured given to the company and mortuary assessments, but taking no notice of the annual expense dues which were payable August 22, 1890, amounting to $6. The secretary replied calling attention to the fact that this assessment was overdue for three months, and that he could not accept it unless a satisfactory certificate of health was furnished. He enclosed blanks for that purpose, stating that they must be filled and returned before the certificate could be put in full force. Before this reply reached the attorney, the assured had died.

This being all the evidence offered by the plaintiff, the court instructed the jury that she could not recover; whereupon she took a nonsuit, and, after an ineffectual attempt to vacate the same, she appealed.

It will be thus seen that the only question presented for our consideration is whether the acts of the defendant in this case were of a character to furnish evidence of a waiver of forfeiture of the policy,

which by the express terms of the contract occurred upon the nonpayment of the dues of August 22, 1890.

*Waiver* depends solely upon the intention of the party against whom it is invoked, and is in that respect essentially different from *estoppel.* Hence we attach no importance to the fact that the evidence fails to show that the two circulars issued by the defendant, and above set out, were seen by the assured or read by him. If the evidence adduced clearly tends to show an intention on the part of the defendant to waive the forfeiture, it is immaterial for the purpose of establishing a waiver whether such intention was communicated to the assured or not. On the other hand it is equally immaterial, in determining the question of waiver, whether the assured believed that the defendant intended to waive the forfeiture, if it cannot be reasonable inferred from its acts that such was its intention. While it is said that the question of waiver is ordinarily a question for the jury, this simply means that the sufficiency of the evidence is a question for them. Whether there is any evidence of a given fact must always remain a question of law for the court.

Keeping the above distinction in view, we must conclude there was no evidence of a waiver in this case, the sufficiency of which the court could have submitted to the jury. Notwithstanding the default of the payment in the August installment, the assured still remained *sub modo* a member of the defendant company. He might by the terms of the contract, upon satisfactory proof of good health, have been reinstated at any time within one year after such default. Section 4, above set out, recognizes that he is a member of the company, notwithstanding such lapse. There is, therefore, no inconsistency in the action of the company in addressing to him circulars as a member, and yet claiming that he had ceased to be an unconditional member.

In that respect this case is essentially different from the cases cited by the appellant, all of which are cases which lack this element. In *Chicago Life Insurance Co. v. Warner*, 80 Ill. 410, the premium fell due on June 28; the assured failed to pay it and died the next day., Thereafter the company wrote to him under date of July 2: "The premium on your policy, * * * *fell due* June 28. * * * If you wish *to continue this policy in force*, you will please remit the above amount to this office by return mail." This clearly indicated an intention on part of the company to waive the forfeiture, *and continue* the policy upon a subsequent payment of the premium. In *Murray v. Home Benefit Life Ass'n*, 90 Cal. 402, the company solicited the payment of overdue assessments, and gave notice of a subsequent assessment; the policy contained no condition of a reinstatement on terms, and none were annexed to the solicitation. In *Robinson v. Pacific Fire Ins. Co.*, 18 Hun, 395, overdue premiums were demanded by the company from the *executors*, and it was held that such demand waived a forfeiture of the policy, which the company might have claimed on the ground that the death of the assured worked a change in the title. In *Insurance Co. v. French*, 30 Ohio St. 240, the agent of the company took a check and note in payment of the premium, adding to the note that its nonpayment should work a forfeiture of the policy. The policy itself had no such condition. The court held there was no forfeiture. The question of waiver did not arise in this case. In *Elmer v. Mutual Benefit Life Ass'n*, 47 N. Y. St. Rep. 35, the assessment was payable on October 15, and the assured died on October 1, The court held that a recovery could not be defeated by failure to pay an assessment payable after the death of the assured. In *Stylow v. Ins. Co.*, 69 Wis. 224, the policy was similar to the one in the case at bar, providing for

a restoration only on payment of arrears and a certificate of health. It appeared in evidence, however, that the company had collected sixty-three consecutive assessments, all at a time when they were overdue without requiring in any instance a certificate of health. This was held such a course of conduct as to estop the company from insisting on a forfeiture for nonpayment of premium on the exact day. The case is one of estoppel and not of waiver. On the other hand in *Schmidt v. Modern Woodmen*, 54 N. W. Rep. 264, it was held on a policy containing *the clause of reinstatement on terms* that a member in default could not claim a waiver and reinstatement *without terms*, although he was called upon to pay a subsequent assessment by a letter specially [directed to him. So it was held in *Ronald v. Mutual Reserve Ass'n*, 132 N. Y. 378, that the fact of furnishing blanks to a defaulting member's representatives, and giving them directions how to fill them out, was a mere act of courtesy, and in no way a waiver of a forfeiture which the company claimed.

As the member in the case at bar remained a conditional member notwithstanding his default, the sending of circulars of the company to him, which simply advised him of accruing assessments within the year when his conditional right of reinstatement still existed, and of the methods provided by the company for the collection of such assessments, is no evidence of a waiver of a forfeiture of unconditional membership.

The judgment is affirmed. All the judges concur.