### LEFLER v. NEW YORK LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1906.)

No. 2,045.

1. INSURANCE—LIFE INSURANCE—PROVISIONS—GRACE IN PAYING PREMIUMS.
   A life policy, after providing for the payment of premiums in regular course on a designated day in each year, declared that "a grace of one month during which the policy remains in full force will be allowed in payment of all premiums except the first," and that "if any premium is not paid on or before due, or within the month of grace," the liability of the company shall be only that stated in the automatic nonforfeiture provision of the policy. A portion of the second premium was paid in cash and a note given for the balance, which provided that it should be paid "without grace, six months after date," and that, if it should not

be paid "at maturity," all benefits which full payment in cash of the premium would have secured should become "immediately" void and forfeited, except as otherwise provided in the policy. *Held,* that these provisions of the policies and notes show, without any uncertainty or ambiguity, that it was the intention of the parties that the provision for a grace of one month should be applicable to the payment of all premiums in regular course, according to the terms of the policy, but without application to that portion of the second premium which was taken out of the regular course and made the subject of a special agreement extending the time for payment and expressly excluding grace. Amidon, District Judge, dissenting.

2. EVIDENCE—PAROL EVIDENCE CONTRADICTING WRITTEN CONTRACT.

In an action at law upon a written contract, the terms of which are certain and unambiguous, parol evidence of the negotiations preceding its execution is not admissible to contradict or vary its terms, nor can this rule be evaded on the theory that such evidence can be admitted to raise an estoppel in pais.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1756.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

March 18, 1899, the New York Life Insurance Company issued and delivered to Henry C. Lefler two policies of insurance upon his life. Each policy was for $2,500, designated Sarah E. Lefler as the beneficiary, and provided for the payment by the insured of an annual premium of $115.10 on the 18th day of March in each year, until 20 premiums should be paid. Each contained what is called an automatic nonforfeiture provision, under which, notwithstanding a failure to duly pay the second premium, the first having been duly paid, the insurance was to continue automatically for two months beyond the first year, and, notwithstanding a failure to duly pay the third premium, the first and second having been duly paid, the insurance was to continue automatically for two years and two months beyond the second year, and so on, according to a table which was set forth. The premium for the first year was paid, one half in cash when the policies were issued and the other half six months later, according to the terms of two notes given therefor when the policies were issued. One half of the premium for the second year was paid when due and the other half was covered by two notes executed by the insured at that time and similar to those before given. Each policy provided: "If any premium is not paid on or before due, or within the month of grace, the liability shall be only as hereinbefore provided for such case"; the concluding words having reference to the automatic nonforfeiture provision. The words "or within the month of grace" were explained by the following: "A grace of one month during which the policy remains in full force will be allowed in payment of all premiums except the first, subject to an interest charge at the rate of five per cent. per annum." The notes given for the remaining half of the second premium were as follows:

"March 18, 1900.

"Without grace, six months after date I promise to pay to the order of the New York Life Insurance Company, 57.55 Dollars at First National Bank, Omaha, Neb. Value received, with interest at the rate of five per cent. per annum. This note is given in part payment of the premium due March 18, 1900, on the above policy, with the understanding that all claims to further insurance, and all benefits whatever which full payment in cash of said premium would have secured, shall become immediately void and forfeited to the New York Life Insurance Company, if this note is not paid at maturity, except as otherwise provided in the policy itself.          Henry C. Lefler."

These notes were not paid or offered to be paid on or before September 18, 1900, which was six months after their date; but three days later, September 21st, the insured tendered payment thereof and the tender was rejected because not made in time. About that time the company wrote to the insured saying: "The notes which you gave in part settlement of premiums due March 18th, 1900, under policies Nos. 931,817–18 has been returned by our branch office unpaid, and the policies are now canceled in accordance with the agreement under which the notes were accepted. As the matter now stands, all claims to further insurance and all benefits whatever which a full payment in cash would have secured to you, have now become void and forfeited, except as otherwise provided in the policies or by statute." November 1, 1902, the insured died. In an action at law on the policies, the beneficiary in her petition set forth the facts just stated, and, in addition to other matters not here material, alleged that at the time of the issuance and delivery of the policies the company's agent at Omaha, Neb., through whom the policies were issued and delivered, told the insured that the company would permit the premium to be paid semiannually; that this could be accomplished by the insured paying one half of each premium in cash when due, and then giving notes like that before set forth for the other half; that this arrangement would give him the same privileges and rights which he would have obtained if the policies themselves provided for the payment of the premiums semiannually; and that the company would so construe the policies and notes. And it was alleged that the insured, relying upon these statements of the agent, did not read the notes before he signed them. A demurrer to the petition was sustained, and, plaintiff declining to amend, judgment was rendered for defendant.

Samuel L. Winters, for plaintiff in error.

Charles A. Goss (James H. McIntosh, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and AMIDON, District Judge.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

If the premium notes were payable, without grace, six months after their date, it is plain the insurance had terminated long prior to the death of the insured, and no recovery can be had upon the policies. But the plaintiff contends (1) that the provision in the policies relating to grace in the payment of premiums gave the insured a grace of one month within which to pay the notes after the expiration of the stipulated six months; and (2) that, if the notes contain any provision to the contrary, the defendant is estopped from enforcing it by reason of the statements made to the insured by the agent before the notes were given. The time within which the premiums on a policy of insurance shall be paid, and whether with or without grace, is a subject in respect of which it is competent for the insurer and the insured to make any contract which is satisfactory to them at the time; and such a contract is as obligatory upon the parties to it as is any other contract competently made.

What agreement do the policies and notes show was made in this instance? Each policy, after providing for the payment of premiums in regular course on the 18th day of March in each year declared that "a grace of one month during which the policy remains in full force will be allowed in payment of all premiums except the first"; and that "if any premium is not paid on or before due, or within

the month of grace," the liability of the insurer shall be only that stated in the automatic nonforfeiture provision of the policy. Each note, in extending the time for paying a portion of the second premium, provided that it should be paid, "without grace, six months after date," and that, if it should not be paid "at maturity," all benefits which full payment in cash of the premium would have secured should become "immediately" void and forfeited, except as otherwise provided in the policy. These provisions of the policies and notes when read together, as it is conceded they must be, show without any uncertainty or ambiguity that it was the intention of the parties that the provision for a grace of one month should be applicable to the payment of all premiums in regular course according to the terms of the policies, but without application to that portion of the second premium which was taken out of the regular course and made the subject of a special agreement extending the time for payment and expressly excluding grace. The only objections urged against this conclusion are that the words "without grace" in the notes have reference, not to the month of grace named in the policies, but to the three days of grace allowed by the law merchant in the payment of certain negotiable instruments, and that in the concluding provision of the notes, viz., "and all benefits whatever which full payment in cash of said premium would have secured, shall become immediately void and forfeited to the New York Life Insurance Company, if this note is not paid at maturity, except as otherwise provided in the policy itself," the excepting clause qualifies, not the operative words "shall become immediately void and forfeited," but the words "at maturity." Both objections are without merit. The words "without grace" obviously include the month of grace named in the policies and make the notes payable six months after date without further indulgence or respite. The excepting clause in the concluding portion of the notes clearly has reference to the automatic nonforfeiture provision in the policies, a highly beneficial feature of the insurance which would otherwise be immediately cut off by a failure to pay the notes. It follows that the plaintiff's first contention cannot be sustained.

The remaining question, although spoken of by counsel as one of estoppel, is really whether, in an action at law upon the contract evidenced by the written policies and notes, the certain and unambiguous terms of the latter can be contradicted or varied by parol evidence of the negotiations which resulted in their execution and acceptance. This question, including the authorities now relied upon by counsel, was fully considered by this court in the recent case of Connecticut Fire Insurance Co. v. Buchanan (C. C. A.) 141 Fed. 877, and was ruled adversely to the plaintiff's contention. See, also, Coombs v. Charter Oak Life Insurance Co., 65 Me. 382; Insurance Co. v. Mowry, 96 U. S. 544, 547, 24 L. Ed. 674; Ivinson v. Hutton, 98 U. S. 79, 82, 25 L. Ed. 66; George v. Tate, 102 U. S. 564, 570, 26 L. Ed. 232. A reexamination of the subject satisfies us that upon both reason and authority that ruling should be adhered to.

The judgment is affirmed.

143 F.—52

AMIDON, District Judge (dissenting). In order to correctly understand the several provisions of the written instruments from which the court holds that the insured ought to have known that his policies would be forfeited on the 18th day of September, 1900, if his notes were not then paid, the parts of the policy bearing on that subject and the notes themselves ought to be brought together before the mind. The pertinent provisions of the policy are as follows:

"This policy is automatically nonforfeitable from date of issue as follows: First, if any premium is not duly paid, and if there is no indebtedness to the company, this policy will be endorsed for the amount of paid-up insurance specified on the second page in the table upon written request therefor within six months from the date to which premiums were duly paid; or, if no such written request is made, will automatically continue from said date for $2,500 for the term specified in said table and no longer. Said paid-up insurance or continued insurance shall be subject to the provisions of this policy, without further payment of premiums, but without participation in profits, or the right of securing cash loans.

"Second. If any premium or interest is not duly paid, and if there is any indebtedness to the company, this policy will be endorsed for such amount of paid-up insurance as any excess of the reserve held by the company over such indebtedness will purchase according to the company's present published rate of single premiums; upon written request therefor within six months from the date to which premiums were duly paid; or if no such request is made, an insurance equal to the net amount that would at the time be payable under this policy as a death claim, will automatically continue for as long a period of time as any excess of the reserve held by the company over such indebtedness will pay for a single premium for term insurance, according to the company's present published rates and for no longer. Such paid-up insurance or continued insurance shall be subject to the provisions of this policy, without further payment of premiums, but without participation in profits, or the right of securing cash loans.

"Third. If the nonforfeiture provisions in either of the two preceding paragraphs become operative, the insured may resume full participating premium-paying membership at any time within five years thereafter, upon written application therefor, and the payment of premiums to date of resumption, with interest at the rate of five per cent. per annum, including interest due and unpaid on any loans, subject to evidence of insurability satisfactory to the company, and to payment or reinstatement of any loans.

"If any premium is not paid on or before due or within the month of grace, the liability of the company shall be only as hereinbefore provided for such case.

"Grace in the Payment of Premiums. A grace of one month during which the policy remains in full force, will be allowed in payment of all premiums except the first, subject to an interest charge at the rate of five per cent. per annum."

The notes were in the following form:

"March 18, 1900.

"Without grace, six months after date I promise to pay to the order of the New York Life Insurance Company, 57.55 Dollars at First National Bank, Omaha, Neb.

"Value received, with interest at the rate of 5 per cent. per annum.

"This note is given in part payment of the premium due March 18th, 1900, on the above policy, with the understanding that all claims to further insurance, and all benefits whatever which full payment in cash of said premium would have secured, shall become immediately void and forfeited to the New York Life Insurance Company, if this note is not paid at maturity; except as otherwise provided in the policy itself.        Henry C. Lefler."

I agree with the majority of the court that when all the foregoing language is examined by the trained judicial mind, aided by the argu-

ment of counsel, the conclusion is justified that the policy became immediately forfeitable on the 18th day of September, 1900, in case of the nonpayment of the notes. Conceding this, however, I do not think that the affirmance of the judgment necessarily follows. It is now elementary law not only in federal courts, but in all American and English courts as well, that the forfeiture of insurance policies is not favored, and that if the language which the insurance company has chosen is open to construction that construction will be adopted which will sustain the policy. Not only this, but it is also now settled that the language conditioning a forfeiture must be both plain and explicit. The policy holder cannot be required to bring together such complicated instruments as are presented by this record, and deduce from an analysis of their provisions the company's right to the forfeiture of his policy. The rule that all the provisions of contracts will be examined to ascertain the rights of parties cannot be resorted to for the purpose of evolving a right of forfeiture. That right, if it exists, must be stated in express language, and not be found either by reference or as a deduction from combining numerous provisions. Any other doctrine makes an insurance contract a snare and a fraud on the assured. McMaster v. Life Insurance Co., 183 U. S. 25, 49, 22 Sup. Ct. 10, 46 L. Ed. 64; Royal Insurance Co. v. Martin, 192 U. S. 149, 162, 24 Sup. Ct. 247, 48 L. Ed. 385; and opinion of Judge Hook in Atlas Reduction Co. v. New Zealand Fire Ins. Co. (C. C. A.) 138 Fed. 509.

I cannot escape the conclusion that the court in the foregoing opinion has approached the question for decision in a mistaken light. The question is not what do these instruments say to a trained judicial mind, aided by the argument of counsel, after all of their relevant provisions have been sorted out and brought into such relationship as to make their meaning manifest. The question rather is what would these provisions mean, as they stand embodied in the instruments, to the average layman, untrained in the construction of written documents. When the question is thus looked at, it does not seem to me that the conclusion of the majority is either "clear" or "obvious," as the opinion states. The words "without grace," occurring as they do in a promissory note, are certainly as open to the construction that they refer to the 3 days of grace allowed by the law merchant as to the 30 days allowed by the policies. The concluding phrase of the note, "except as otherwise provided in the policy itself," would be as likely to direct the mind of a layman to the provisions of the policy allowing 30 days additional time for payment as to the other provisions relative to paid-up insurance. The practice of allowing a period of 30 days for the payment of life insurance premiums is now universal. The payment of the notes in question was really the payment of such a premium. If the company seeks to take that payment out of the general practice as to the payment of insurance premiums and condition a forfeiture of the policy upon a failure to pay the notes promptly at their maturity, it ought to have declared this purpose expressly, and in plain language in the notes themselves, and not by dark and ambiguous reference to the complicated pro-

visions of the policy. Instead of framing the notes in the language adopted, some such language as this should have been used:

"This note is given in part payment of the premium due March 18, 1900, on the above policy. The thirty days of grace allowed by the policy for the payment of cash premiums will not be allowed for the payment of this note; on the contrary, if this note is not paid at the date of its maturity, Sept. 18, 1900, all claims to further insurance and all benefits whatever which full payment in cash of said premium would have secured will become immediately void and forfeited to the New York Life Insurance Company, except the right to paid-up insurance as provided in said policy."

This language would have fully protected the company, and would have at the same time fairly and justly advised the insured that the note was excepted from the general practice as to the payment of cash premiums, and that his policy would be forfeited if the note was not paid promptly at its due date. If we are to adopt the doctrine that language which to the trained judicial mind, aided by the argument of counsel, expresses a right of forfeiture secures that right, what becomes of the rule that the right of forfeiture must be expressly stated and not by reference, and must be embodied in plain and unambiguous language? It is simply abolished. In my judgment the majority of the court has failed to give effect to this rule in the foregoing opinion, and the Supreme Court of Wisconsin fell into a similar error in Behling v. Northwestern Life Insurance Company (Wis.) 93 N. W. 800.