KOEHLER *v.* MODERN BROTHERHOOD OF AMERICA.

1. INSURANCE — FRATERNAL BENEFICIARY ASSOCIATIONS — FORFEITURE FOR DEFAULT—ESTOPPEL—WAIVER.

The acceptance of twelve assessments out of seventeen after the dates required in the policy of insured, does not operate as a waiver or estoppel to claim the forfeiture for a subsequent delayed payment.

2. SAME—SUSPENSION—ESTOPPEL—WAIVER.

No estoppel or waiver of the forfeiture is to be understood from the mailing of a postal card to delinquent members by the secretary of a local organization, advising them that payment must be made before the 15th instant, or they would stand suspended, when the insured had been suspended by default for forty days.

3. SAME—ACCEPTANCE OF PREMIUM—ASSESSMENT.

Whether or not a local secretary had authority to accept delinquent assessments, no waiver could be based on such acceptance where he was ignorant of the fact that the insured was dying and could not comply with the conditions of his contract as to reinstatement.

Error to Wayne; Murfin, J. Submitted January 10, 1910. (Docket No. 17.) Decided March 5, 1910.

Assumpsit by Katherine Koehler against the Modern Brotherhood of America on a policy of insurance. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*H. M. & D. B. Duffield,* for appellant.

*Stephen D. Williams* and *John E. Foley,* for appellee.

HOOKER, J. The plaintiff brought this action to recover upon a mutual benefit certificate issued by the defendant, a fraternal society, to the son of the plaintiff;

she being named as beneficiary. The plaintiff has appealed from an adverse judgment.

Plaintiff's son joined the society, and took his certificate or policy of insurance on July 30, 1906. On March 14, 1907, he had not made the payments for January and February of that year. These were paid by his sister to the secretary of the local subordinate lodge on March 14th. Her brother, the insured, had been seriously ill for some days, and died about 11 a. m. of that day. At the time of the payment, the sister answered a question from the secretary, as to his health, that he was not feeling very well. Her brother died within an hour. The money paid was tendered back to the beneficiary. It appears to be conceded that at the time of the payment deceased stood suspended, and that his policy was void according to the by-laws of the order, and that there was no valid claim against the company, unless the forfeiture had been waived.

The acts relied upon to constitute such waiver were:

(1) A general practice of delinquency on the part of plaintiff.

(2) An alleged postal card filled out on a blank, said to have been printed by the supreme body and sent by the secretary of the subordinate lodge, reading: "Pay your dues on or before the 15th or you will stand suspended." It was received on March 13th.

(3) The acceptance of the money by the secretary on March 14th.

The by-laws relied on by the defendant provided (*a*) that a failure to pay any assessments, dues, or charges, as required by the laws, rules and regulations promptly when due, should make the membership cease and the certificate void.

"Any member failing to pay his assessments and dues on or before the last day of each month after due notice has been given, shall stand suspended, and during such suspension such certificate shall be null and void.

"Each and every member so notified through the official paper that a benefit assessment has been levied or

ordered by the board of directors, in manner and form hereinbefore provided, failing to pay the same to his lodge secretary on or before the last day of the month in which said notice is dated, or who shall fail to pay his lodge secretary his *per capita* tax or other dues on or before the last day of said month,   *   *   *   shall stand suspended and during such suspension his benefit certificate shall be null and void.

"Any member suspended for nonpayment of assessments, dues or fines,   *   *   *   may be reinstated by payment to the secretary of his lodge of all arrearages of every kind, including all fees, dues, and assessments maturing subsequent to the date of his default, within sixty (60) days from the date of his suspension; provided, however, that he be in good health at the time of his reinstatement, and furnishes to the secretary of his lodge a written warranty in duplicate to such effect, signed by himself.   He shall also deliver his certificate to the secretary of his lodge, who shall immediately send the same together with said written warranty to the supreme secretary, who shall attach the original warranty to the application of said person, and the duplicate thereof to his certificate after which said certificate shall be returned to the secretary, who sent in the same.

"Should any secretary receive payment of arrearages from any member whose health at the time is impaired,   *   *   *   said secretary shall upon conviction thereof, after an investigation by his lodge, be expelled.   To convict a secretary under this section proof must be produced showing that he had knowledge of the member's condition.

"And no officer of this fraternity is authorized or permitted to waive any of the provisions of this division, or of these laws, or any of the laws of this fraternity, which shall relate to the contract of insurance between the members and the fraternity."

It is said that the insured had paid 17 assessments, only 5 of which were paid on or before the date specified, and that this was evidence of a practice which misled plaintiff and excused promptness in payment, and that the court erred in refusing to charge the jury that if the insured had been misled by long continued course of conduct, and so believed that a strict performance on his part was not

necessary, the defendant could not insist on the forfeiture, and also instructing the jury that the insured, not having paid his assessments within the time specified, stood suspended, and being suspended at the time of his death, no insurance could be recovered. We are of the opinion that the evidence did not justify the request made, and that the charge given was as favorable instruction as the plaintiff was entitled to. The defendant was not responsible for these delays. The supreme body was not in a position to know the exact dates of payment, and may never have known that there was a delinquency; but, even if it did and was willing to overlook such delinquencies and receive and treat the payments as seasonably made, this liberality should not be given the effect of waving in advance subsequent delinquencies, thereby, in effect, abrogating the provisions of the contract and practically making a new one.

2. Counsel for the plaintiff contend that the printing of postal cards like the one used, and allowing their use by the subordinate lodge, was indicative of a practice by the supreme body of permitting arrearages without suspension, and that the local secretary had, and by sending the card and receiving payment exercised, the power of waving the suspension. This postal card was a printed notice, and read as follows: "Pay your dues on or before the 15th or you will stand suspended." It was evidently intended for general use as a reminder to members for the purpose of avoiding delay in payments and consequent suspension, and, if it is to be given the effect of a waiver, it must be upon the theory that, inasmuch as the insured already stood suspended, there was no occasion to send a notice, unless it was intended to overlook the delinquency, and that the action must be so construed, and in effect an extension of time to make payment until the 15th. We have indicated the obvious purpose of the supreme lodge in having these notices sent out, and there is nothing in the record that it ever authorized any other use of them. Moreover, to constitute an estoppel, such card must have

been instrumental in causing the suspension, which it obviously did not, for the insured had already stood suspended for more than 40 days. It is quite as consistent to say that this notice was given to call insured's attention to the fact that there were arrearages and the necessity of his taking steps to relieve himself from his suspension in the manner provided by his policy as to signify that his delinquency had been gratuitously overlooked and his time extended. It is probable that there was no special intent about it, and that the card was filled and sent out in the regular routine work of the office. If there was no intention to waive, there was no waiver, and the notice would have no effect, in the absence of an estoppel. The notice itself is inconsistent with either estoppel or waiver, and, as said, the waiver must be inferred from the fact that a notice to pay was sent at all after suspension if it is to be inferred at all, and for reasons given did not create an estoppel. That would be to punish defendant for its attempt at fairness.

The undisputed facts are that at the time the card was sent the insured was sick and in arrearage 45 days, and stood suspended without action of the lodge. He had a right to reinstatement upon certain conditions. Unless he was able to comply, he had no right to reinstatement. The conditions were: (1) Payment. (2) A condition of good health. (3) A certificate to such effect. Upon compliance, the supreme body (not the local lodge) was under a contract obligation to reinstate him upon certain conditions. When he received the card, the assured was seriously ill with abscess on the brain, and at the time the sister paid the dues he was moribund. He died within an hour. Under these circumstances, he had no right to reinstatement, for he was not in good health. It is a sufficient answer to say that, if the local secretary could waive the conditions (which we do not intend to imply), there can be no such waiver, where, as in this case, he acted in ignorance of the fact that the insured was moribund. *Louden* v. *Modern Brotherhood of America,*

107 Minn. 12 (119 N. W. 425); *Royal Highlanders* v. *Scoville*, 66 Neb. 213 (92 N. W. 206); Niblack on Accident Insurance and Benefit Societies (2d Ed.), § 294; *Schmidt* v. *Modern Woodmen of America*, 84 Wis. 101 (54 N. W. 264).

The judgment is affirmed.

MOORE, MCALVAY, and BROOKE, JJ., concurred. BLAIR, J., concurred in the result.