## SOUTHLAND LIFE INS. CO. v. HOPKINS.*
### (No. 263-3483.)

(Commission of Appeals of Texas. Section B. Nov. 15, 1922.)

**1. Insurance ☜349(1)—Time of payment in life policy of essence of contract.**

The time of payment in a life insurance policy is material, and of the essence of the contract, and the failure to pay involves forfeiture which cannot be relieved against in equity.

**2. Insurance ☜357—Insured not entitled to period of grace upon maturity of note given for deferred premiums.**

Where a term life policy provided that payment of premiums should not maintain the policy in force beyond the date when the next installment was due, but that a grace of 31 days without interest should be granted on every premium after the first, and that upon default the policy might be reinstated on evidence of insurability satisfactory to insurer, and it appeared that insured gave a note for an installment of premiums and died the day after the note was due without having paid it, and without reinstatement, no recovery could be had thereon on the theory that a 31-day period of grace was given upon maturity of the note, the entire extension of time evidenced by the note constituting more than the period of grace provided for by Rev. St. art. 4741.

**3. Insurance ☜133(1)—Provisions in note for premiums held not invalid under statute requiring policy to express entire contract.**

A provision, in a note given for deferred premiums under a term life policy, that the note should become void if not paid at maturity, *held* not invalid as in violation of Rev. St. art. 4953, requiring every policy to contain the entire contract; such statute having no application to agreements between insurer and insured made subsequently to the issuance of the policy.

**4. Insurance ☜138(2)—Premium note held not void as a discrimination between insurants of same class.**

Provisions in a note given for deferred premium payments under a term life policy *held* not void as contravening Rev. St. art. 4954, prohibiting discrimination in favor of individuals or between insurants of the same class, since it will be presumed that the practice of extending time of payment by note is under a general rule of the company applying to all policy holders similarly situated.

**5. Insurance ☜357—Agreement for extension of payment of premiums held binding on both parties.**

An agreement embodied in a note providing for an extension of time of payment of premiums under a term life policy *held* binding on the insurance company and on insured, regardless of whether it violated Rev. St. arts. 4953 and 4954.

**6. Insurance ☜388(3)—Insurer held not to have waived payment of premium note at maturity.**

Where, after accepting a note for the payment of deferred premiums under a life term policy, insurer before the maturity of the note wrote insured reminding him that the note would become due on a certain date and that it provided no grace and that settlement should be made without fail on or before maturity, a statement in such letter that it would accept a partial payment and extend the balance a reasonable time *held* not a waiver of the payment of the note at maturity.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Mollie I. Hopkins against the Southland Life Insurance Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (219 S. W. 254), and defendant brings error. Reversed and rendered.

Seay, Seay, Malone & Lipscomb, of Dallas, and W. H. Bledsoe, of Lubbock, for plaintiff in error.

Percy Spencer and Bean & Klett, all of Lubbock, for defendant in error.

McCLENDON, P. J. This was a suit by Mollie I. Hopkins against the Southland Life Insurance Company upon a life insurance policy by which the latter insured the life of plaintiff's husband, Bion P. Hopkins. The only issue is whether the policy had lapsed before Bion P. Hopkins died, by reason of failure to pay a premium note when due. The facts are without dispute. The policy was issued February 28, 1916, was for $5,000 and was a five-year term policy issued upon consideration of payment in advance of an annual premium of $66.45 in cash and a like payment on each February 28th thereafter during the five-year term covered by the policy, or until the death of the insured. It provided that the method of making payments might be changed from annual to semiannual or quarterly, at the option of the insured by giving notice, and—

"Except as herein provided the payment of the premium, or installments thereof, shall not maintain the policy in force beyond the date

when the next payment or installment thereof is payable. A grace of thirty-one days without interest shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the period of grace, the unpaid premium for the then current policy year shall be deducted from the amount payable hereunder. Upon evidence of insurability satisfactory to the company this policy, if it has not been surrendered, may be reinstated at any time after default, provided the term for which this policy was written has not expired, upon the payment of arrears of premiums with interest at the rate of 6 per cent. per annum."

The initial and second premiums were paid. On January 21, 1918, insured wrote the company asking that the third premium falling due shortly thereafter be carried until fall. On January 23, 1918, the company in reply to this letter inclosed a note which it agreed to accept in lieu of the current premium. This note was executed by insured and returned to the company, and the latter on February, 5, 1918, issued its receipt for the premium. The note was dated February 28, 1918, was for $66.45 payable on or before October 28, 1918, without grace, and bore interest at 6 per cent. per annum. It contained the following stipulation:

"This note is given on account of the premium due February 28, 1918, on policy No. 17003, issued by said company, and if it is not paid at maturity, said policy shall be void, subject to the provisions therein contained, in which event, this note shall be a valid obligation, for the pro rata premium, from date to which premiums on this policy have been actually paid in cash, to the date of maturity of this note, together with interest thereon. In case of the death of the insured before this note falls due, the amount of this note, with interest, shall be deducted from the amount of said policy."

The receipt had the following clause:

"If settlement of the amount described on the face of this receipt is made by note, and such note is dishonored at maturity, this receipt shall be null and void and all insurance under the policy shall cease and determine, and the policy shall stand cancelled as of the date of maturity, of said note, subject to the provisions of said policy."

On October 19, 1918, the company wrote insured as follows:

"In order that your policy may not lapse, we beg to remind you that the note due October 28th, you gave in lieu of the premium due last February, provides no grace and settlement should be made without fail on or before maturity.

"If inconvenient to pay the full amount due, $69.13, we will accept a partial payment and extend the balance a reasonable time."

On the day this letter was written the insured was taken ill and died October 29, 1918, no action of any kind having been taken with

reference to the letter of October 19th, and no payment having been offered or made upon the premium note.

The trial court rendered judgment for Mrs. Hopkins for the amount of the policy, principal, interest, attorney's fee, and penalty, less the amount of the note. The Court of Civil Appeals affirmed this judgment. 219 S. W. 254.

A number of grounds are urged for holding the policy in force at the time the insured died, notwithstanding the premium note had matured before that time and had not been paid. Most of these grounds were sustained by the majority of the Court of Civil Appeals. We shall not discuss in detail all the questions thus presented, but will state generally our views of the legal principles which we think control a proper disposal of the case.

Regardless of whether the policy were a whole life or term policy, default in payment of the annual premiums in advance on or before the very day upon which they became due, or upon which the period of grace allowed therein expired, would ipso facto terminate all liability upon the policy, subject only to the right of reinstatement upon proof of insurability and payment of premiums, as provided in the above-quoted stipulation:

"The time of payment in such policy is material, and of the essence of the contract; and a failure to pay involves * * * forfeiture, which can not be relieved against in equity." New York Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204.

[1] This proposition is too well settled to require discussion. It is now elementary. The following, among other Texas cases, support it: Ins. Co. v. Wimberly, 102 Tex. 46, 112 S. W. 1038, 23 L. R. A. (N. S.) 759, 132 Am. St. Rep. 852; Underwood v. Ins. Co., 108 Tex. 381, 194 S. W. 585; Roberts v. Ins. Co. (Tex. Com. App.) 221 S. W. 268; Ins. Co. v. Chowning, 8 Tex. Civ. App. 455, 28 S. W. 117.

When the note of February 28, 1918, was executed and the receipt issued for the premium, each of which provided in substance that the policy should become void if the note were not paid at maturity, the note represented the premium and took its place in the contract of insurance, and a failure to pay it on or before maturity rendered the policy void, subject, of course, to reinstatement, under its terms, unless the period of grace given in Revised Statutes, art. 4741, and carried into the policy, automatically extended the policy another grace period, or unless the above-quoted letter of October 19, 1918, amounted to a waiver of the forfeiture.

The question which it seems to us has greatest importance in the case, and the only one upon which there was no dissent in the Court of Civil Appeals, is whether the period of grace required by statute and carried into

the policy should be added to the maturity date of the note.

Article 4741, Revised Statutes, requires every policy of life insurance to contain, among other things, the following provisions.

"1. A provision that all premiums shall be payable in advance either at the home office of the company or to an agent of the company upon delivery of a receipt signed by one or more of the officers who are designated in the policy."

"2. A provision for a grace of at least one month for the payment of every premium after the first, which may be subject to an interest charge, during which month the insurance shall continue in force, which provision may contain a stipulation that, if the insured shall die during the period of grace, the overdue premium will be deducted in any settlement under the policy."

[2] No question could arise with reference to compliance on the part of the insurance company with these statutory requirements, since they were substantially embodied in the policy. We are unable to distinguish in principle between a provision for grace embodied in a policy at the mandate of a statute, and the same provision voluntarily placed therein by the insurer in the absence of such statute. The same language, we think, should have no different effect when used by a legislative body from what it would have if used by ordinary individuals. Provisions for grace had become quite general in life policies even before the enactment of statutes requiring them. The most common method employed in making such extensions is by note, in form substantially the same as that in the instant case. These notes have acquired, in insurance parlance, the name "blue note." Ins. Co. v. Board of Assessors (C. C.) 158 Fed. 462; Robnett v. Ins. Co., 148 Ark. 199, 230 S. W. 257. We see no valid reason why such agreements should not be enforced, if at all, in accordance with their plain import. This has been the uniform holding of courts in other jurisdictions. The reason generally assigned is that, when the policy is kept alive during the grace period provided therein, the insured has received all the indulgence he has contracted for, and any further extension of time is but additional grace or indulgence, and cannot be extended by mere implication beyond the time expressly contracted for. This reasoning we think cannot be assailed. The language of the note that if it be not paid at maturity the policy should be void, "subject to the provisions therein contained," merely refer, we think, to the provisions for reinstatement. The policy was in force during the entire 28th of October, 1918. It became void at the expiration of that date, and no attempt to reinstate it was made. Nor could it have been reinstated by the insured under the provisions of the policy, because at that time he was in his last illness

and could not have complied with the stipulation to furnish evidence of insurability. The exact question here presented was decided in accordance with the above views in the case of Schmedding v. Northern Assur. Co., 170 Mich. 528, 136 N. W. 361, in which a statute practically identical with our own was sought to be applied in a similar manner. In that case the court say:

"We are of opinion that he [the insured] is in no position to complain that he did not have all the grace which is contemplated either by the statute or the contract of insurance. We do not think that he was entitled to two periods of grace. We do not think there is anything in the statute or contract of insurance that prohibits the respondent from giving the extended grace that was granted to relator in the manner it was in this case, so long as the policy was kept in full force for its full amount during the grace period. Certainly the relator is in no position to complain of it. To hold otherwise would be to punish the respondent for its apparent attempt at fairness in extending the grace. Koehler v. Modern Brotherhood, 160 Mich. 180, 125 N. W. 49, 136 Am. St. Rep. 424."

The following cases support the view above expressed that contractual grace periods in policies are not to be added to conventional extensions of time evidenced by notes providing that the policy shall become void or cease if the notes are not paid at maturity. Robnett v. Ins. Co., 148 Ark. 199, 230 S. W. 257; Bank v. Ins. Co., 125 Ga. 552, 54 S. E. 643; Holly v. Ins. Co., 105 N. Y. 437, 11 N. E. 507; Ins. Co. v. Leedy, 62 Okl. 131, 162 Pac. 760, L. R. A. 1917C, 917; Reed v. Ins. Co. (C. C.) 192 Fed. 408; Lefler v. Ins. Co., 143 Fed. 814, 74 C. C. A. 488; McGeachie v. Ins. Co., 23 Can. S. C. 148.

The latest expression we have been able to find upon this subject is from the Arkansas case above cited. We quote from that opinion:

"Counsel also contend that the provision of the policy allowing one month's grace for the payment of premiums would have the effect of extending the time for the payment of the premium one month after the due date of the blue note. But this contention cannot be sustained, for the reason that the blue note covers the provision for grace contained in the policy and extends the time for the payment of premiums for longer than one month."

[3] The further contention is made that the provision of the note that the policy should become void if it were not paid at maturity is invalid because, in contravention of article 4953, to the effect that every policy shall contain the entire contract between the parties, and of article 4954, which prevents discrimination in favor of individuals or between insurants of the same class and of equal expectation of life in the amount of, or payment of, premiums or rates charged for policies of life insurance, etc.

It was held in Insurance.Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 242, that article 4953, requiring the policy to contain the entire contract between the parties, has no application to agreements between the insurer and insured made subsequently to the issuance of the policy. This, we think, is the correct construction of that statute. It is supported by the weight of decision in other jurisdictions. ·

[4] We have serious doubts whether an agreement to extend the time of payment of a premium comes within the inhibitions of article 4954, unless there were a showing that indulgence of this character was not extended to all within the same class alike; and there is no such showing here. Agreements of this character are quite generally made by a number of insurance companies, as will be readily seen from the adjudicated cases. In the absence of some showing to the contrary, it should be presumed, we think, that this practice of extension, when indulged in, was under some general rule of the company adopted for what it considered as sound business practice, and applied to all policy holders similarly situated.

[5] But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company, regardless of whether it violated either or both the statutory articles invoked. Insurance Co. v. Tabor (Tex. Sup.) 230 S. W. 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agreement charged with its burdens as well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured. Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384. This principle is announced in the following quotation from the Underwood Case, above:

"We think the beneficiary should not be allowed to accept the benefits of the extension of the life of the policy which was provided by the execution of the note by her husband, and its acceptance by the company, and at the same time be heard to complain that it changed the contract and disturbed her vested rights. It seems inequitable for her to rely upon the note to prevent a forfeiture of the policy for a failure to pay a premium, and at the same time to repudiate the provisions of the note relating to forfeiture, when they are substantially the same provisions provided in the policy itself."

[6] The only remaining question which we deem of sufficient importance to notice is whether the letter of October 19, 1918, can be construed as a waiver of the payment of the note at maturity. We think this question should be answered in the negative. We do not deem it necessary to review Ins. Ass'n v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; the Underwood Case, above, or Roberts v. Ins. Co. (Tex. Com. App.) 221 S. W. 268. The facts in each of those cases were essentially different from those of the case at bar, and they present no analogy to the present case. To constitute waiver there must be some statement or conduct by the insurer which would reasonably warrant the conclusion that it did not intend to exercise some right or advantage which it had. There is nothing in the letter of October 19th to indicate that the insurance company intended to waive or would not demand or require payment of the note at maturity at least in part. The clear import of the letter was to negative such interpretation. The letter in express terms states that it is written "in order that your policy may not lapse" and as a reminder that the note would become due on October 28th, that it provided no grace, and that settlement should be made without fail on or before maturity. There was no offer to extend payment of the entire note for any period. There is a distinct statement that the company would accept a partial payment and extend the balance a reasonable time. No partial payment was made or offered, no further communication was had between the insured and insurer, and there is nothing in this letter to suggest or intimate that the company would do more than carry a part of the note beyond its maturity date. It may be conceded that the facts of the case before us "are most appealing to the sympathy," and that "the consequence of the lapse of the policy is deplorable"; but it is not within the province of the courts to relieve parties sui juris from the burdens which by their voluntary undertakings they have imposed upon themselves, however strong may be the prompting of altruistic sentiments. Misfortune, however deplorable, cannot be invoked to defeat express contractual rights, where the contract itself does not provide for relief in such contingency.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and judgment rendered that the defendant in error take nothing by her suit against the plaintiff in error.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.