IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## EASTERN DIVISION.

---

### JACKSON, APRIL TERM, 1901.

---

McLENDON *v.* WOODMEN OF THE WORLD.

(*Jackson.*  April 13, 1901.)

1. BENEFIT SOCIETIES. *Certificate of, void when.*

A benefit certificate which is signed and delivered after the death of the applicant, is void, no matter how long the application for it had been pending or what other steps had been taken to mature and perfect it, where the liability of the society is conditioned, by the terms of the contract, upon delivery of the certificate to the applicant while living and in health. (*Post, pp. 697–709.*)

2. SAME. *Application and constitution and by-laws are part of contract, when.*

The application for a benefit certificate and the constitution and by-laws of the benefit society constitute the basis and part of

(695)

---

---

its contract as fully as if copied into same, where they are referred to and declared such on the face of the certificate issued. (*Post, pp. 707, 708.*)

Cases cited: Catholic Knights *v.* Kuhn, 91 Tenn., 214; K. of P. *v.* LaMalta, 95 Tenn., 160.

3. SAME. *Waiver of condition.*

The condition that the liability of a benefit society shall not attach under its benefit certificate unless same is delivered to the applicant while living and in good health is a valid one that cannot be waived by the unauthorized, premature, and forbidden action of an inferior jurisdiction in initiating the applicant before his application has been accepted by the proper authority and the certificate delivered in compliance with the constitution and by-laws of the order. (*Post, pp. 708, 710, 711.*)

4. SAME. *Delay in acceptance of application.*

Mere delay of a benefit society in passing upon an application for a benefit certificate gives no rights to the applicant and does not afford any presumption of acceptance of his application. (*Post, pp. 708–710.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

W. A. DUNCAN and C. D. M. GREER for McLendon.

R. M. BEATTIE and BROME & BURNETT for Woodmen of the World.

WILKES, J. The defendant is a fraternal and beneficial order. Its objects and purposes are thus set out in its "Constitution and Laws":

"Sec. 3. The · object of this order shall be to combine white male persons of sound bodily health, exemplary habits, and good moral character, between the ages of eighteen and fifty-two, into a secret, fraternal, beneficiary, and benevolent order; provide funds for their relief; comfort the sick and cheer the unfortunate by attentive ministrations in times of sorrow and distress; educate its members in moral, social, and intellectual matters, and promote fraternal love and unity; create a fund from which, upon reasonable and satisfactory proofs of the death of the beneficiary member who has complied with the lawful requirements of the order, there shall be paid a sum not to exceed three thousand ($3,000) dollars to the person or persons named in his certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his . wife, children, adopted children, parents, brothers, sisters, or other relatives, and to ˙erect a tombstone or monument at the grave of every such deceased member."

It is insisted that J. J. McLendon, the husband of the plaintiff, Mrs. A. T. McLendon, was a fraternal and beneficial member of the order at the time of his death on the third day of January, 1899, and that the plaintiff became thereby

entitled to the payment of $1,000 as his bene-ficiary.

By way of defense it is said on behalf of - the order that J. J. McLendon, at the time of his death, was not a beneficial member of the order; that no certificate · had been delivered to him, and that at the time of his death his application for membership and insurance was pending, but the contract had not been consummated and closed.

There were two trials in the Court below. Upon the first trial there was a verdict of a jury and judgment for $1,180.17, which was by the Court set aside, presumably on the ground that there was no liability on the part of the company. A bill of exceptions was taken and preserved. Upon the second trial, the plaintiff having introduced her evidence and rested her case, the defendant asso-ciation demurred to the· evidence. Upon that de-murrer issue was joined, and upon the hearing the trial Judge gave judgment for the defendant company, and plaintiff has. appealed and assigned errors.

The evidence in the case is largely embodied in an agreed statement of facts. From this state-ment it appears that the deceased, McLendon, hus-band of plaintiff, made his application to become a member of the order November 28, 1898.

This application was forwarded by the local camp at Memphis to J. B. Frost, an officer of the order at Atlanta, Georgia, who, after counter-

McLendon *v.* Woodmen of the World.

singing it, sent it to the Sovereign Camp of the
order, at Omaha, Nebraska. By it the applica-
tion and physician's report were delivered to the
Sovereign Camp Physician on December 19, 1898,
who returned it to the local camp physician to
fill in certain answers in the applicant's "personal
history." After filling in the required matter, it
was returned to the Sovereign Physician December
29, 1898. It was then accepted by the order,
and it issued the certificate December 31, 1898,
and immediately sent it to the clerk of the local
camp at Memphis.

Prior to the thirty-first of December, when the
certificate was dated and issued, the applicant was
taken sick, and from this sickness died January
3, 1899. The application, medical report, and cer-
tificate are all made part of the record by the
agreed statement of facts.

The only payment made by the deceased was
$1 physician's fee and $2 entrance fee. The
printed constitution, by-laws, and rules of the order
are also made part of the record.

It is agreed that the Sovereign Physician would
state, if examined, that the application and medi-
cal examination was returned to the local camp
physician in good faith for the purposes heretofore
stated, and not for purposes of delay, but the
truth of this statement is not conceded. By a
supplemental agreement it appears that after the
certificate was signed, dated, and issued, it was

sent by the Sovereign Camp at Omaha to J. B. Frost, Provisional Head Consul at Atlanta, Georgia, who received it on or about January 4, 1899, and not knowing of the death of the applicant on the preceding day, January 3, 1899, he countersigned the certificate and sent it forward to the local camp; that the certificate was never signed by the Consul Commander and clerk of the local camp, and was not delivered to. J. J. McLendon, or any one for him, on account of his illness and death, and that this illness antedated December 31, 1898, the date of the issuance of the certificate; that McLendon's death occurred January 3, 1899, prior to the receipt of the certificate by the clerk of the local camp from Frost, the Provisional Head Consul at Atlanta.

It was further agreed that all payments required of J. J. McLendon at the time his application was received and acted upon were made, and that all money received from him was tendered back to his widow after his death. Proof was introduced to show that some persons were initiated and obligated into the local Memphis camp as members before they received their benefit certificates, but it was not the custom of the local camp to do so.

The application, of date November 28, is for membership in the order and participation in the beneficiary fund to the extent of $1,000 at the death of the insured, or such amount as the

Sovereign Physician may approve, and a monument. It states that the entrance fee and certificate fee, amounting to $10, accompanies the application, and it directs that a beneficiary certificate be issued, payable at his death to his wife, Anna T. McLendon. It also contains this statement, among others:

"I do hereby consent and agree that this application shall form the sole basis of my admission to and membership in this order, and the beneficiary certificate to be issued on this application," etc. It further provides that the application and examining physician's report are, the basis of and shall form part of the certificate issued thereon. It is further agreed that all of the provisions and laws of the order now existing, or hereafter adopted, shall form a part of the certificate issued hereon, whether printed on or referred to in such certificate or not.

"I further agree that the liability for the payment of benefits to me, or my beneficiary, shall not begin until after this application shall have been accepted by the Sovereign Physician, a beneficiary certificate issued thereon and personally delivered to me, and I shall have made all the payments required in Section 56 of the constitution and laws of the order, and I shall have been obligated in due form."

Upon the back of the certificate is indorsed, "I certify that the applicant herein named was elected

to membership the twelfth day of December, 1898." This is signed by the local clerk. Also indorsed is the certificate of the local physician as to the careful, personal examination of the applicant, a certificate of his identity, and that his fee for examination has been paid, etc.

Also a note that the application should be forwarded, if in a Southern State, to Jno. B. Frost, Provisional Head Consul, Atlanta, Georgia.

The following provisions of the constitution and by-laws are made part of record as bearing upon and fixing the right of the applicant, to wit:

"Sec. 56. The liability of the Sovereign Camp, or Beneficiary Head Camp, for the payment of the benefits upon the death of a member, shall not begin until after his appliction shall have been accepted by the Sovereign Physician or Head Physician, his certificate issued, and he shall have—

"1. Paid all the entrance fees.

"2. Paid his advance assessment.

"3. Paid the Sovereign Camp, Beneficiary Head Camp, or Camp General Fund dues for the month.

"4. Paid the physician's fee for medical examination.

"5. Having been obligated or introduced by a camp or authorized deputy in due form.

"6. Had delivered to him his beneficiary certificate while in good health."

"The foregoing is hereby made a part of the

McLendon *v.* Woodmen of the World.

consideration for, and are conditions precedent to the payment of benefits in case of death.

"Sec. 57. The noncompliance with or nonperformance of any of the requirements in the preceding section, upon the part of the applicant, shall be an absolute bar to any claim upon the beneficiary funds of the order, under or by virtue of any beneficiary certificate that may have been issued in his name or by reason of any preliminary steps he may have taken to entitle him to the same; and no deputy, officer, or any member of the Sovereign Camp or Beneficiary Head Camp or Camps, has authority to change, alter, modify, or waive the foregoing requirements or the consequences thereof in any manner."

"Sec. 53. Upon the delivery of a beneficiary certificate to an applicant he shall deposit with the clerk of the camp one advance beneficiary assessment and one monthly payment of Sovereign Camp or Head Camp General Fund dues and camp dues. And no clerk shall accept payment of any advance beneficiary assessment or General Fund dues from an applicant until said applicant's beneficiary certificate has been received by said clerk from the Sovereign Clerk or Head Clerk, and properly countersigned by the camp officers, and not then unless said applicant is in good health at the time."

"Sec. 58. The following conditions shall be made

a .part of every beneficiary certificate, and shall be binding upon member and order:

"1. This certificate is issued in consideration of representations and agreements made by the person named herein, in his application to become a member, and in consideration of the payment made when introduced in prescribed form; also his agreements to pay all assessments and dues that may be levied during the time he shall remain a member of the Woodmen of the World.

"2. In case of his death while a member in good standing in the order, his beneficiary, or beneficiaries, shall receive the full amount named in his certificate, unless the proceeds of one assessment upon all members in good standing during the month following the approval of the claim shall be less than said amount, in which case his beneficiary, or beneficiaries, shall only receive the proceeds of one assessment in full settlement of all demands.

"3. If the admission fees, dues, or beneficiary fund assessments levied against the person named in this certificate shall not be paid to the clerk of his camp, as required by the constitution and laws of the order, this certificate shall be null and void, and continue so until payment is made in accordance therewith.

"4. The liability of the Sovereign Camp or Beneficiary Head Camp for the payment of benefits under this certificate shall not begin until the

McLendon *v.* Woodmen of the World.

member named herein shall have paid all the entrance fees, paid his advance assessment, paid the Sovereign Camp, Beneficiary Head Camp, or Camp General Fund dues for the month, paid the physician's fee for medical examination, been obligated or introduced by a camp or authorized deputy in due form, and had delivered to him his beneficiary certificate while in good health. The foregoing provisions are hereby made a part of the consideration for and are conditions precedent to the payment of benefits in case of his death."

"Sec. 47. An application for membership shall be referred to a committee of three members, upon whose report a ballot shall be spread, three negative votes rejecting. If favorable, he shall be examined by the camp physician, paying a fee therefor. Should the examination be favorable, the physician shall forward the application to the Sovereign Clerk, Head Clerk, or Provisional Head Consul, as the case may be. If it shall be approved by the Sovereign or Head Physician, a certificate shall be issued in such a manner as he may determine, duly attested by the proper officers, and forwarded to the Provisional Head Consul, if under such a jurisdiction, if not, to the clerk of the camp; he shall notify the applicant, after which he can be introduced at a regular or special meeting.

"And it shall not be lawful for any camp,

22 P—45

nor member thereof, to introduce nor obligate any applicant until his certificate shall have been received by the clerk of the camp, and unless said applicant shall be in good health at the time; *Provided,* That the condition herein requiring the applicant's certificate to have been received · by the clerk of the camp at the time of his introduction or obligation, shall not apply when an applicant is introduced or obligated at the institution of the camp, nor when otherwise provided for by dispensation of the Sovereign Commander. But nothing herein shall be construed to authorize any member or camp to introduce or obligate an applicant while not in good · health.

"Sec. 82. When an applicant applies ¯for membership he shall pay the organizing deputy, or · the camp clerk, the entrance or charter fees, which shall include that for the beneficiary certificate. But in no case must they pay to either the · physician's fee.

"Sec. 83. Should an applicant be rejected by · the Sovereign Physician or Head Physician, after · he shall have been introduced, he may remain a fraternal member, and be entitled to all the rights. and privileges of the order, except beneficiary, and as otherwise restricted in this constitution and laws; but the entrance or charter fee shall not. be refunded to him.

"The camp shall collect and forward to the · Sovereign Clerk or Head Clerk, from every such

fraternal member, the same Sovereign Camp or Beneficiary Head Camp monthly dues as are paid by beneficiary members, the nonpayment of which shall cause his suspension. To reinstate, said delinquent fraternal member shall pay to the clerk of the camp all delinquent Sovereign Camp, Beneficiary Head Camp, and camp dues.

"He shall be required to pay the same camp dues as · beneficiary members."

We are of opinion that under the provisions of the application and certificate, as well as the constitution and by-laws of the order, plaintiff cannot recover under the facts in this record.

The application signed by Mr. McLendon provides on its face that it, as well as the constitution and by-laws of the order, shall form the basis of the contract, and they enter into it and become a part of it as fully as if copied into it in so many words. Niblack on Benefit Societies, Sec. 18, pp. 34, 35; Sec. 136, pp. 271, 272; *Catholic Knights* v. *Kuhn,* 7 Pickle, 214; *Sup. Lodge Knights of P.* v. *La Malta,* 11 Pick., 160; 3 Am. & Eng. Enc. L. (2d Ed.), 1081; Bliss on Life Ins., Sec. 463; May on Ins. (3d Ed.), Sec. 552.

Under the terms of the application, certificate, constitution and by-laws, the beneficiary certificate was not in force until, among other things, the certificate was delivered to the applicant. Joyce on Insurance, Sec. 70; *McMaster* v. *N. Y. Life*

*Ins. Co.,* 99 Fed., 857; *Ray* v. *Security Trust & Life Co.,* 35 S. E. Rep., 246; *McDonald* v. *Provident Sav. Co.,* 84 N. W., 154; *Reese* v. *Fidelity Mutual Life,* 36 S. E., 637; *Pittsville Mut. F.* v. *Minnegua, etc.,* 10 Pa. St., 137; *Porte* v. *Am. Union,* 52 N. Y. Sup., 910; *Mc-Lane* v. *Mutl. Reserve,* 26 Atl., 38; *Conn. Mutl. Life* v. *Rudolph,* 45 Tex., 454; *Sup. Lodge* v. *Grace,* 60 Texas, 569; Bacon Ben. Societies, Sec. 272; *Wilcox* v. *Sovereign Camp,* 76 Mo. App., 573; *Watkins* v. *Sup. Lodge,* 18 S. W.; *Kuhn* v. *Mut. Reserve Co.,* 28 Fed., 707; 3 Am. & Eng. Enc. of L. (2d ed.), 1079.

And if the certificate, application, or constitution and rules so provide, he must at the time be in good health. Bacon on Benefit Societies, Secs. 232, 277; *Swartz* v. *Germania Life,* 18 Minn., 448; *Mulroy* v. *The Shawnut Mut.,* 4 Allen, 116, 123. And if the applicant dies before delivery, the certificate does not become binding by delivery to the beneficiary. Niblack on Benefit Soc., Sec. 139, p. 280. And it could not become binding by an unauthorized delivery. *Fitzmorris* v. *Mut. Life,* 84 Texas, 61; *Kempe* v. *W. O. W.,* 44 S. W., 688. And the unauthorized action of the local camp would not bind the order. *Kempe* v. *W. O. W.,* 44 S. W. Rep., 688.

It is said there was unreasonable delay in returning the certificate, and it having been actually signed and issued from the Sovereign Camp

December 31, should be held to take effect at a prior date.

It is only necessary to state that there does not appear to have been any delay arising out of bad faith on the part of the company.

Neither the application nor the constitution and rules of the order prescribe any limit within which the certificate shall be returned and contract completed.

Before the certificate was signed the applicant had become sick. Before it was ready for delivery he was dead.

There does not appear to have been any unnecessary or unreasonable delay, but only such as was required to perfect the application and examination.

Beneficial societies may decide for themselves whom and when they will admit as members. Until an applicant is accepted under the constitution, by-laws, rules and stipulations of the contract, he does not become a beneficial member, nor entitled to insurance.

Mere delay in passing upon his application will give him no rights and afford no presumption of its acceptance. Niblack on Ben. Soc., Sec. 142, pp. 282, 283; *Wilcox* v. *Woodmen of World,* 76 Mo. App., 573.

In the latter case, involving this same order, the applicant was not only duly and legally initiated, being a charter member (for whom special pro-

vision is made), but the certificate was in the hands of the clerk of the local camp from July 2 or 3 to July 26, undelivered, and only lacking the signatures of the clerk and consul of the local camp, payment of the advance assessment and dues, and delivery of the certificate. The local camp met July 26 and designated the following day for such signing, payment, and delivery; on that day the applicant appeared and requested delivery of the certificate, saying he had the money for his payments. The clerk stated that the Consul Commander was not in, but would be soon, and would sign the certificate, and applicant could call later and get it. He replied "All right," and left, but never returned. The certificate was signed that day, the 27th, but was not delivered, because the applicant did not call for it. The applicant was drowned August 2, not having received the certificate. The Court held that delivery was essential, and in its absence, though to some extent the fault of the local officers, there was no liability on the company.

We think that the two cases cited by plaintiff's counsel of *Cooper* v. *Pac. Mut. Ins. Co.,* 8 Am. Rep., 705, and the other of *Cotton States Life Ins. Co.* v. *Lester,* 35 Am. Rep., 122, are not in point nor controlling in this case.

It is said that Mr. McLendon was initiated as a member by the local lodge, and this was a waiver. But this was clearly unauthorized under

McLendon *v.* Woodmen of the World.

the constitution and by-laws, and could have no other or further effect, if any, than to make him a fraternal and not a beneficial member. 3 Am. & Eng. Enc. Law (2d Ed.), 1080.

We see no ground of recovery for the plaintiff, and affirm the judgment of the Court below.