DAVID R. LOUDEN v. MODERN BROTHERHOOD OF AMERICA.[1]

January 22, 1909.

Nos. 15,942—(87).

**Life Insurance—Conditions of Policy.**

Benevolent fraternal associations are not included in the class of insurance companies referred to in section 1616, R. L. 1905, which provides that neither the application nor the by-laws shall be considered as a part of the contract, unless incorporated in the policy.

**Membership in Fraternal Association.**

According to the by-laws of respondent association the beneficiary fund is applicable to members only, and, to constitute membership in a prospective local lodge, the applicant must pass the physician's examination, be accepted at the head office, and be initiated and receive the obligation after the local lodge is organized. If the applicant is in good health upon the completion of these several steps, he is entitled to receive a certificate of membership.

**Authority of Deputies—Contract.**

District and local deputies have authority to solicit and receive applications for membership in a local lodge, receive the membership and examination fees, forward the applications to the home office, receive the certificate when approved by the home office, and deliver the same to the secretary of the local lodge when organized. But such deputies have no authority to vary the terms of the contract by accepting assessments or by delivering the certificate to applicants before the lodge is organized and the applicant becomes a member.

**Same—Uncompleted Contract.**

The application of respondent's wife was approved by the home office and returned to the local deputy, who delivered it to her with the declaration that it was in force. The lodge was organized a week later, and

1 Reported in 119 N. W. 425.

she was voted in as a member, but was prevented by sickness from attending, and so was not initiated and did not receive the obligation. After the lodge was organized the certificate was attested by respondent as secretary and by the president, and redelivered to her. *Held*, she did not become a member of the lodge, the contract was not completed, and the certificate was void.

### Waiver—Judgment Notwithstanding Verdict.

Respondent, the beneficiary named in the certificate, reported as secretary of the local lodge to the head office that the applicant had become a member, and respondent paid several assessments, which were received and applied in payment thereof at the head office in ignorance of the facts. *Held*, acceptance of the money did not constitute a waiver by the association of the right to repudiate the transaction and the certificate upon discovery of the facts. On the undisputed evidence the defendant was entitled to judgment notwithstanding the verdict.

Action in the district court for Freeborn county to recover $1,000 upon a contract of insurance. The case was tried before Kingsley, J., and a jury which rendered a verdict in favor of plaintiff for $1,060. From an order denying defendant's motion for judgment notwithstanding the verdict, it appealed. Reversed and judgment ordered for defendant.

*Kerr & Fowler, Blythe Markley,* and *Rule & Smith,* for appellant.

*H. H. Dunn* and *Lafayette French,* for respondent.

LEWIS, J.

Appellant was organized in the state of Iowa under a statute as follows: "A fraternal beneficiary association is hereby declared to be a corporation, society, or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, and having a local lodge system, with ritualistic form of work and representative form of government." The association was permitted to carry on business in other states than Iowa, and for that purpose it appointed district or local deputies, who were authorized to receive applications for membership and to organize local lodges. A state manager was appointed for Minnesota, and a Mr. Aldrich was appointed district manager for certain territory, including the village of Glenville, and a Mr. Adams was appointed as a local deputy for the purpose of soliciting and receiving applications

for membership in the local lodge to be organized at Glenville. Insurance was the leading feature of the association, and all applicants, with a special exception, who received certificates of membership were subject to assessment. When ten applications for membership had been received and accepted at the main office, the deputies were authorized to call a meeting of such applicants and organize the local lodge. The certificates of membership, having been approved and returned from the home office, were attested by the president and the secretary of the local lodge, and delivered to the member, at which time they became effective.

In February, 1906, Calista E. Louden, the wife of respondent, made application for membership in a lodge to be organized in the village of Glenville. She passed the physician's examination, and her certificate was approved at the home office and returned to Mr. Adams, the local deputy, who had solicited her application, among others. Instead of retaining the certificate until the lodge was organized, Adams handed it to Mrs. Louden herself, or to respondent for her. Soon after this occurrence, a sufficient number of applicants having been approved by the main office and returned, a meeting of the applicants was called for March 22, for the purpose of organizing the lodge. At that meeting respondent was elected secretary and Mr. Koontz president. The deputies were present and initiated the applicants, with the exception of Mrs. Louden, who was unable to be present on account of sickness. Notwithstanding that fact, upon the completion of the organization, respondent, as secretary, and Mr. Koontz, as president, attested Mrs. Louden's certificate of membership and certified to the fact that she was a member of the lodge, and so informed the home office in Iowa. Respondent, who was the beneficiary in the certificate held by his wife, paid the assessments as they became due, which amounts were received at the home office and applied to the proper account. Mrs. Louden died of acute Bright's disease on June 9, 1906, and, the association having failed to honor the certificate, this action was brought to recover the amount of the certificate, $1,000, with interest.

1. One of the defenses relied upon by the association is that the certificate of membership never became a valid contract, for the reason that Mrs. Louden never became a member of the association. In an-

swer, respondent refers to section 1616, R. L. 1905, and claims that the defense is not available because those portions of the by-laws relied on were not set out in the certificate. The statute is as follows: "A statement in full of the conditions of insurance shall be incorporated in or attached to every policy, and neither the application of the insured nor the by-laws of the company shall be considered as a warranty or a part of the contract, except in so far as they are so incorporated or attached."

Chapter 19, R. L. 1905, is divided into many heads and treats of all classes of insurance companies and fraternal associations. Under the head of "General Provisions and Definitions" it is provided by section 1594 that, unless the context otherwise requires, "company," or "insurance company," shall include every corporation and association engaged in insurance. Fraternal beneficiary associations are specially referred to, and are defined as in the Iowa statute. Sections 1595, 1596, and 1597 refer to insurance proper, or to companies engaged in the business for profit. Under the heading "Life Insurance Companies," commencing with section 1687, fraternal co-operative associations are exempt from the general provisions applicable to life insurance companies. The same exception is made in section 1695, and beneficiary and fraternal associations are specially referred to in section 1703. An exception is also made with reference to fraternal beneficiary associations in section 1710. Notwithstanding some doubt arises from the fact that section 1616 is general in terms, and is found under the general heading "Provisions Common to All Companies," it is reasonably certain that there was no intention to make any change in the then existing law, and place fraternal benevolent associations in the same class with fire insurance companies in this respect.

2. The association issues no certificates except to members, and there can be no members until they pass the local physician's examination, receive the approval of the main office, are initiated into the lodge, and receive the obligation. Acceptance by a vote of the other members is a necessary step, but not the final act constituting membership. The by-laws also contain express stipulations, viz., that no certificate shall become binding until the applicant has become a member, and the certificate attested by the local officers and delivered to the applicant, in good health. The association reserves the right to

cancel the application if, between the time of the physician's examination and the final act constituting membership, the applicant should become disqualified on account of sickness. The contract is that the applicant must be in good health at the time he completes the final act of membership. Then, and not till then, is he entitled to the certificate.

3. Such being the contract, did the deputies, or either of them, have any authority to vary its terms, and to deliver to Mrs. Louden the certificate, so as to make it binding in advance of the organization of the lodge, or did they have authority at the time of the organization to direct that she be accepted as a member, for the purpose of receiving a certificate, notwithstanding her absence? We answer these questions unreservedly in the negative. The by-laws unqualifiedly restrict the authority of the deputies to the mere duty of soliciting applications, forwarding the same to the home office, and receiving membership and physician's fees. They were authorized to organize lodges and give instructions in the ritual work, but were not endowed with any general authority which permitted them to depart from the provisions of the by-laws, and therefore the act of Mr. Adams in handing the policy to the beneficiary, or his wife, a week before the lodge was organized, with the statement that it became effective from that date, was not the act of the association; and if either of the deputies at the time of the organization stated that the presence of Mrs. Louden was not necessary, and directed the president and secretary to attest her certificate and report to the home office that she was a member, such act was without authority and void. Neither the applicant, nor the beneficiary, had any right to rely upon any such statement, if it was made.

4. Finally respondent invokes the doctrine of waiver. It is true that the several amounts paid by the beneficiary were received at the home office and applied in payment of the assessments; but in so doing the officers of the association relied on the correctness of the report by respondent, as secretary, and Koontz, as president, that Mrs. Louden was in fact a member. Those officers of the local lodge were endowed with authority to determine that fact for the association. Respondent, as secretary, was charged with knowledge of the by-laws. His authority was there defined. His duty was to certify to the facts only, and, having certified that his wife was a member, the head offi-

cers were justified in accepting his representation as true and in receiving the money he sent. The truth was not discovered until proof of death was made. The right to repudiate the transaction by which the certificate was delivered was not waived by acceptance of the money, for the reason that the officers were ignorant of their right to repudiate. The facts controlling this case are undisputed. The law is well settled, and the learned trial court was in error in assuming that there were questions of fact for the jury. Graves v. Modern Woodmen, 85 Minn. 396, 398, 89 N. W. 6; Taylor v. Grand Lodge A. O. U. W. of Minn., 96 Minn. 441, 442, 105 N. W. 408, 3 L. R. A. (N. S.) 114.

Reversed. Judgment ordered for appellant.

JAGGARD, J.

I dissent.