## McWILLIAMS v. MODERN WOODMEN OF AMERICA.†

(Court of Civil Appeals of Texas. Dallas. Dec. 2, 1911. Rehearing Denied Jan. 13, 1912.)

1. INSURANCE (§ 694*)—MUTUAL BENEFIT SOCIETY—MEMBERSHIP—NECESSITY OF ADOPTION.

The by-laws of a mutual benefit society expressly provided that applicants for membership should be balloted on by the local camp before being adopted, and that before becoming a member an applicant should be adopted by the camp at a regular meeting occurring at the camp hall within 60 days after the issuance of a benefit certificate. An application for membership executed by deceased stated that he understood the by-laws and mode of organization of the society, and waived all claim for benefits under his application until he should be regularly adopted, in accordance with the ritual, and until the certificate issued on the application should be delivered for adoption, and while he was in sound health, pursuant to the by-laws of the society. *Held*, that he never having been adopted, and his certificate never having been delivered because he failed or refused to present himself for adoption, he was not a member of the society, and his certificate was ineffectual.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1834, 1835; Dec. Dig. § 694.*]

2. INSURANCE (§ 817*)—MUTUAL BENEFIT SOCIETY—BY-LAWS—NOTICE.

Members of a fraternal beneficiary society are conclusively presumed to have notice of its by-laws.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1199–2002; Dec. Dig. § 817.*]

3. INSURANCE (§ 724*)—MUTUAL BENEFIT SOCIETY—BY-LAWS—WAIVER.

Where the by-laws of a mutual benefit society provided that no officer or local camp was authorized to waive any of the provisions relating to the contract between a member and the society, and further prescribed that no person should become a member until duly adopted by his local camp, etc., the deputy head consul of the society, authorized to obtain new members and to organize local camps, had no authority to waive such by-laws by taking the application of a member and communicating to him the secret work of the order.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1866–1868; Dec. Dig. § 724.*]

4. INSURANCE (§ 720*)—MUTUAL BENEFIT SOCIETY—DELIVERY OF CERTIFICATE.

Where the by-laws of a mutual benefit society provided for delivery of the member's certificate only after his adoption in a regular meeting of the lodge, the delivery of a member's certificate by the head officers to the clerk of the member's local camp was not in itself sufficient to constitute a delivery to the member; he never having been legally adopted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1856; Dec. Dig. § 720.*]

5. INSURANCE (§ 724*)—MUTUAL BENEFIT SOCIETY—COLLECTION OF FEES.

Where an organizer of a mutual benefit society collected a membership fee on decedent's application and also collected without official authority $1.80 camp dues of a beneficiary member, which sum was never paid to the camp, or received by the society, such collection did not estop the society from denying that decedent ever became a member; he never having been legally adopted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1866–1868; Dec. Dig. § 724.*]

Appeal from District Court, Navarro County; N. B. Daviss, Judge.

Action by Annie E. McWilliams against the Modern Woodmen of America. Judgment for defendant, and plaintiff appeals. Affirmed.

J. M. Blanding and Richard Mays, for appellant. Pat M. Neff and Benj. D. Smith, for appellee.

BOOKHOUT, J. This suit was instituted in the district court of Navarro county, Tex., by Annie E. McWilliams, appellant, against the Modern Woodmen of America, appellee. The suit was brought to enforce the payment by the appellee of $1,000 on account of a certain benefit certificate issued by the said appellee for delivery to one John M. McWilliams, in which the appellant was

designated as beneficiary. Plaintiff's petition alleges that "John M. McWilliams made application for membership in Bazette Camp No. 12,676, a subordinate lodge, located at Bazette, Tex., through one J. N. Cunningham, deputy head consul of the society; that the said Cunningham, under the custom of the defendant and authority in him vested, did adopt McWilliams as a member of the society; that his said acts were thereafter ratified by the camp and by the society; that thereafter McWilliams was examined, and his application for membership was forwarded to the head office of the society, where a benefit certificate was issued and forwarded to the camp, whose duty it was to deliver same to McWilliams, and such duty was a mere ministerial act; that McWilliams paid to the defendant all fees and charges of every kind up to the time of his death. Plaintiff further alleges that the constitution of the society provided that applicant should be adopted by the lodge, but that the defendant, in its eagerness to procure members, waived said provision and gave applicant the secret work in private, and this was the practice and custom of officials in Texas and well known to the defendant; that, notwithstanding the secret work had been given McWilliams by Deputy Cunningham, McWilliams desired and requested the camp to initiate him, and the camp refused; and that the said camp illegally and fraudulently and with malice refused to perform its plain and imperative duty to the said John McWilliams during said period of 60 days, and refused to deliver said certificate, as was its duty, and waited until the expiration of said time, and thereafter wrongfully and illegally claimed that they could not lawfully initiate him, and for which reason it was claimed he was not entitled to said certificate of insurance." It was alleged that McWilliams died July 10, 1908, and that plaintiff thereafter filed proofs of death and her claim was denied. Defendant's answer consists of a general demurrer, a general denial, and an affirmative plea: That the defendant is a fraternal beneficiary society organized under the laws of the state of Illinois, and transacting business as such pursuant to the provisions of the laws of Texas. That the contract sued on was evidenced by the bylaws of the defendant, the application for membership, executed by McWilliams, and the benefit certificate issued thereon, but which was never delivered to and accepted by McWilliams. That on the 24th day of January, 1908, McWilliams executed and delivered his application for membership to the society wherein he agreed "to conform in all respects to the laws, rules and usages of the society now in force or which may hereafter be enacted or adopted by same; that this application and the laws of this society shall form the sole basis of my admission to and membership therein, and of the benefit certificate to be issued me by said Modern Woodmen of America. I fully understand the obligations, organization, mode of government and laws of this society, and particularly that part of the laws defining the qualifications for and restrictions upon its members. I further understand and agree that the laws of this society now in force or hereafter enacted enter into and become a part of every contract of indemnity by and between the members and the society and govern all rights thereunder. And I waive for myself and beneficiaries all claim of benefit under this application until it shall be approved by the head physician and I shall be regularly adopted in accordance with the ritual of this society and shall make the payments as required by its bylaws at adoption, and any certificate which shall be issued to me in pursuance of this application shall be delivered to me after adoption and while in sound health, and in pursuance of the by-laws of the society."

Defendant alleged that the said application was the basis of a benefit certificate issued on the 18th day of February, 1908, to be delivered to McWilliams subject to compliance by him of the by-laws and his agreements in said application. Defendant further alleged that the said benefit certificate never became in force and effect for the reason that said benefit certificate was never delivered to the said McWilliams in compliance with the provisions of the by-laws, and that the said John M. McWilliams was never duly and regularly adopted as a member of the defendant, by reason whereof the said benefit certificate never took effect. Appellant replied to said answer by way of a supplemental petition and alleged a waiver of the provisions of the by-laws by Cunningham and pleaded estoppel. The case was tried on the 8th of December, 1910, and the court, upon motion of defendant, instructed the jury to return a verdict against the plaintiff, which was done, upon which verdict judgment was rendered. Plaintiff excepted to the judgment and perfected an appeal.

It is contended in the first assignment that the court erred in peremptorily instructing a verdict in favor of defendant, because there was evidence raising the issue as to the power and authority, actual as well as apparent, of J. N. Cunningham, deputy head consul, and agent of defendant, to waive the by-laws, requiring the adoption of John M. McWilliams in the lodge room, and to himself adopt the said McWilliams and give him the obligation, whereby he became a member of defendant order in good standing.

[1] The proposition is presented that the evidence was such that the court ought to have submitted the case to the jury, on the issue of Cunningham's authority, real or apparent, to act for and bind the defendant. This proposition cannot be sustained. The defendant is a fraternal beneficiary society

organized under the laws of the state of Illinois and having its head office at Rock Island, Ill. It was duly authorized to transact business in the state of Texas as a fraternal beneficiary society. The statutes with relation to fraternal beneficiary societies expressly provide that such organizations shall operate on the lodge system with a ritualistic form of work. The defendant proposed to organize a local lodge or camp, as it is called, in the town of Bazette, Tex., and for that purpose one J. N. Cunningham, a deputy head consul, was sent to Bazette to solicit members for the organization of the camp there, and to organize such a camp. Under the by-laws, a deputy head consul has authority to organize new camps. The by-laws expressly provided that applicants for membership should be balloted upon by the local camp before being adopted, and that before becoming a member of the society an applicant should be adopted by the camp at the next or some regular meeting occurring at the camp hall within 60 days after the issuance of the benefit certificate. Section 30 of the by-laws further provided that, if an applicant were adopted as a social member before the arrival of the benefit certificate, such benefit certificate should not become effective until delivered by the camp clerk to the applicant while in good health. It is further provided in the by-laws that no officer of the society is authorized or permitted to waive any of the provisions of the by-laws of the society which relate to the contract between the member and the society. McWilliams expressly stated in his application for membership that he understood the by-laws and mode of organization of the society, and that he waived all claim for benefits under his application until "I shall be regularly adopted in accordance with the ritual of this society * * * and until any benefit certificate issued on the application shall be delivered to me after adoption and while in sound health, and in pursuance of the by-laws of the society." Cunningham solicited John M. McWilliams to join the society through the camp at Bazette, which he was organizing. McWilliams indicated that he was willing to join as a beneficial member, but said he did not know whether he would be here to take the obligation before the order, and he wanted it fixed so that he could become a member then, "and I told him he could become a social member by signing a social membership blank, and I would administer the secret work to him, and he signed the social membership blank, and I made him a social member until his application was acted upon." Thereupon McWilliams made out an application for beneficial membership, and Cunningham testified that, "when that application was made to me by McWilliams, I sent it direct to headquarters; that the usual way is, when we organize a lodge, we always initiate them in the lodge-room." He further testified that he had taken the applications of about 300 members, and that he did not remember of having initiated but two out of the lodgeroom. One of them was McWilliams. He further says: "I don't remember whether he (Ware, his superior officer) gave me authority to administer the secret work and initiate applicants or not. He informed me that my duties were to write members and organize lodges. I don't think he gave me authority to administer secret work and initiate applicants. I had in my possession a copy of the by-laws of the organization. That was given to me for my instruction as to the work of the organization." He further testified that he collected from McWilliams $5.25 membership fee, which was the same whether he became a social or beneficial member, and that he also received from McWilliams $1.80 for camp dues, but that "I did not receive that in my official capacity. I told him that I was doing that for the clerk of the camp, though I had no right to do so. * * * I tried to pay it to the camp clerk, but he would not receive it. The reason they would not receive it, they said he was not a member, and that he had never taken the obligations; that said McWilliams would have to come to the lodge in person and get his policy." Mr. McWilliams' application did not go through said camp. It was forwarded direct to the head office by Cunningham, without being acted upon by the camp. The benefit certificate was issued and sent to the local camp, and the camp held it awaiting compliance by McWilliams with the by-laws, which required that he be adopted and that the certificate be delivered to him in person by the clerk before it became effective. McWilliams wrote to E. C. Lee and requested him to obtain the certificate from the camp, and he made application to the clerk for the same, and the clerk informed him that he could not deliver it to him, but the same could only be delivered to McWilliams personally. E. L. Albritto, a relative of McWilliams, also applied to the clerk for the certificate, and was informed that it could not be delivered except to McWilliams in person. The clerk held the certificate for 60 days waiting for McWilliams to comply with the by-laws to put the same in effect, and then, prior to McWilliams' death, forwarded it to the head office. J. M. Massey, the clerk of the camp, testified on cross-examination, "Mr. John McWilliams was never initiated and adopted as a member of Bazette Camp. I never did deliver to him any kind of an insurance policy for the Modern Woodmen of America. He never did come to me and ask me to deliver him an insurance policy." The society directed Cunningham to return to the plaintiff the $1.80, which had been paid to him by McWilliams, and which he had accepted without authority.

[2] We think it clear that members of a

fraternal beneficiary society are conclusively presumed to have notice of the by-laws of the order. Bacon on Benefit Societies, vol. 1 (3d Ed.) § 81; Niblack on Benefit Societies, § 18. In this case not only is it to be presumed that the applicant, McWilliams, had notice of the by-laws of the society, but his application for membership made a part of the beneficiary certificate expressly agrees that the laws of the society shall form the sole basis of his admission to membership therein, and of the benefit certificate issued to him. The by-laws expressly provided that an applicant must be adopted by the local camp, and that a benefit certificate should not be delivered until after such adoption. John M. McWilliams did not become a beneficial member of the society by reason of his not having been adopted as provided by the provisions of the by-laws of the order, and the benefit certificate was not binding on the society. McLendon v. Woodmen of the World, 106 Tenn. 695, 64 S. W. 36, 52 L. R. A. 444; Lathrop v. Modern Woodmen of America, 56 Or. 440, 106 Pac. 328, 109 Pac. 81; Lloyd v. Modern Woodmen of America, 113 Mo. App. 19, 87 S. W. 530; Louden v. Modern Brotherhood of America, 107 Minn. 12, 119 N. W. 425; Modern Woodmen of America v. Owens, 130 S. W. 858.

[3] Appellant argues that the by-laws were waived by the acts and conduct of Cunningham, the deputy head consul and agent of the society. This argument is not sound. It was expressly stipulated in the by-laws that no officer of the society was authorized to waive any of the provisions relating to the contract between a member and the society whether now in force or hereafter enacted. They further provided that no local camp nor any of the officers thereof shall have the right or power to waive any of the provisions of the society. Cunningham was furnished a copy of the by-laws for his instruction in the work of organizing lodges. It is clear that Cunningham was without authority to waive any of the provisions of the by-laws of the society. As already stated, McWilliams in his application states that: "I further understand and agree that the laws of this society now in force or hereafter enacted enter into and become a part of every contract of indemnity by and between the members and the society and govern all rights thereunder."

[4] Again, the delivery of the benefit certificate to the applicant by the camp clerk is, by the terms of the application, certificate, and by-laws a condition precedent to its taking effect. There was no delivery to McWilliams by the clerk of the camp in person, and for this reason the same did not become a contract between McWilliams and the society. Lathrop v. Modern Woodmen of America, supra; McLendon v. Woodmen of the

World, supra; Lloyd v. Modern Woodmen of America, supra.

[5] Its delivery to the local camp did not meet the requirements of the by-laws. Nor was the society estopped by Cunningham's collection from McWilliams of $5.25, membership fee of a social member, and $1.80, camp dues of a beneficial member. He did not receive the $1.80 in his official capacity and was without authority to receive the same. It was never paid to the camp or received by the society, and, when informed of Cunningham's action in collecting the same, he was instructed to return the $1.80 to the applicant. Mrs. McWilliams testified that, "I knew that Mr. Cunningham had that $1.80 and was ready and wanted to pay it back."

We conclude that there was no error in the court's action in instructing a verdict for defendant. This holding renders it unnecessary for us to consider the other assignments.

Finding no error in the record, the judgment is affirmed.