## HANNAH REITER AND OTHERS v. NATIONAL COUNCIL OF KNIGHTS AND LADIES OF SECURITY.[1]

November 5, 1915.

Nos. 19,461—(31).

**Mutual benefit insurance — agreement to reduce amount — recovery.**

 1. The evidence conclusively showed a mutual agreement between defendant, a fraternal benefit society, and an insured member, to the effect that the amount of the benefit certificate should be reduced, and the assessments based on the real age of the member. This agreement was valid and binding upon both parties, though no new certificate was in fact issued or delivered to the member. In this action brought to recover the amount of the original certificate, plaintiffs, if entitled to recover at all, are limited to the amount of the certificate as reduced, with certain deductions, and may recover such amount.

**Tender of assessments — evidence.**

 2. The evidence warranted a finding that the insured duly paid or tendered the assessments and dues for the months of June, July and August, 1910.

**Waiver of prompt payment.**

 3. It was error to receive certain evidence for the purpose of showing a waiver of prompt payment of assessments and dues, and error to submit the case on this theory.

 [1] Reported in 154 N. W. 665.

**Unauthorized conditions — tender of assessments.**

    4. Defendant plainly indicated to the insured that it would not receive assessments and dues from her, unless and until she was re-examined by the physician of the local council. This condition was unauthorized, unless the insured was legally suspended for failure to pay or tender assessments for June or July, 1910. If so unauthorized, insured was not obliged to tender assessments, as it would be a useless act. If there is a recovery by plaintiff, all unpaid assessments and dues should be deducted from the amount recovered.

Action in the district court for Hennepin county by the beneficiaries thereunder to recover $3,000 upon defendant's benefit certificate upon the life of Taube Tennen. The case was tried before Fish, J., who when plaintiff rested and at the close of all the testimony denied defendant's motion to dismiss the action, and a jury which returned a verdict for $2,978. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*William G. White,* for appellant.

*A. R. Chesnut and Thomas R. Kane,* for respondents.

BUNN, J.

Plaintiffs are the beneficiaries under a certificate of insurance issued by defendant in 1904 to their mother, Taube Tennen, who died in March, 1911. This action was to recover $3,000, the amount of the certificate. The answer, among other defenses, alleged the surrender and cancelation of the certificate in April, 1910, by mutual agreement, and that Taube Tennen since that time had paid no assessments to defendant, and was not a member in good standing in the defendant order at the time of her death. The reply alleged a pretended trial of Taube Tennen in 1910; a finding that she had misrepresented her age; a threat of expulsion unless the insured should consent to have her certificate reduced to $2,000, and pay assessments thereafter on the basis of the age of fifty; a surrender of her $3,000 certificate, on the condition that one for $2,000 be issued to her by defendant order; the unlawful cancelation of the $3,000 certificate by defendant, and its failure to issue or deliver to Taube Tennen the $2,000 certificate.

The trial resulted in a verdict in favor of plaintiffs for $2,978, being the amount due with interest under the terms of the $3,000 certificate. Defendant made a motion in the alternative for judgment notwithstanding the verdict, or for a new trial, and appealed from an order denying this motion.

1. The first claim of defendant is that the evidence conclusively showed a surrender and cancelation of the $3,000 certificate by mutual agreement, so that in any event there was but $2,000 insurance on the life of Taube Tennen. The facts which form the basis of this claim are as follows: On April 22, 1910, the national secretary of defendant order wrote a letter to the insured in which he notified her that the national executive committee had had under consideration her membership in the society, and that the evidence satisfied them that the age given by her at the date of entry was incorrect; that she might keep her membership in the society, provided she would agree to be rerated and pay the assessments due at the age of 50 years on a $2,000 certificate, which, she was told, would require her to pay thereafter, beginning with the month of May, 1910, monthly assessments of $3.45 and local council dues. The monthly payments under the $3,000 certificate at the age given at the date of entry were $3. The letter notified the insured that, if she did not accept the action of the committee as to the rerating, she would be expelled from the society and her certificate canceled. It further notified her that the national committee had dissolved her local council and forfeited its charter, and that, if her membership in the society was continued in accordance with the provisions of the letter, it would be necessary for a national transfer card to be issued, transferring her to some other council. The letter closed with a request that the insured advise at once whether or not the proposition is accepted, in order that the transfer card be issued and the April assessments and dues paid within the month. April 29, 1910, Mrs. Tennen wrote to the national secretary, inclosing a money order for $3.15 for April, and asking that a national card be sent her. To this letter the national secretary replied on May 3, 1910, acknowledging the receipt of the $3.15 for the April assessment, stating that before this could be accepted the benefit certificate "must be returned to us and the same changed in accordance with our recent letter to you." The

letter stated that "you have agreed that the certificate shall be reduced to $2,000 and rerated for that amount at the age of fifty years, and that your monthly assessments will be $3.15." The letter also advised the insured that when her membership was placed in another council, she would have to pay local council dues in addition, and that the national transfer card would be issued to her "when the certificate has been changed." Two days later the national secretary wrote the insured that the monthly assessments were $3.45 instead of $3.15, as he had mistakenly stated in his letter of May 3, and asked that the insured, when she sent her certificate for correction, send thirty cents to make the remittance for April correct. On May 8, 1910, Montefiore Council No. 1822 was organized, and it appears that Mrs. Tennen was present at the meeting. Late in May she mailed a check for $3.45 to pay for the May assessment, which was acknowledged June 10, with a request that she add ten cents to her remittance for the June assessment to cover exchange upon this check. Early in July Mrs. Tennen sent the financier of Montefiore Council a check for $3.45, stating it to be in payment of the July assessment. July 14 the financier returned this check to Mrs. Tennen, giving three reasons: (1) He had been instructed by the national secretary not to accept any more assessments from her until she sent in her certificate for change; (2) her letter stated the remittance was for the month of July, while the assessment for June had not been paid; (3) she failed to send twenty-five cents for local dues, and was short another twenty-five cents for the May local dues, and ten cents collection charges on the check for May. The letter closed with the hope that "you will arrange to straighten these matters out at once." In response to this letter and on July 20, 1910, Mrs. Tennen sent a check for $4.15, stating that it was for the June assessment, with fifty cents local dues for May and June, and twenty cents collection charges on this and the May check. She also inclosed her $3,000 certificate "for correction." The check was cashed and certificate retained by defendant, but, on August 11, the financier sent to Mrs. Tennen his check for $3.70, saying he was returning the amount of the June assessment sent July 20, because there had not been sent with it the current July assessment. This letter notified Mrs. Tennen that in order to be reinstated "this month" it would be necessary to remit for June, July and August, total amount

$11.10, and that "I am holding your certificate, which has been changed, until you reinstate." On August 23, Louis Reiter, husband of one of the daughters of the insured, sent the financier a check for $4.15, to apply towards Mrs. Tennen's dues and assessments, and requested him to send the corrected certificate, and advise each month what payments have to be made. On August 24 the financier replied to this letter, returning the check, inclosing a copy of his letter of August 11 to Mrs. Tennen, and stating that it was impossible to reinstate the insured until a remittance was received to cover the current assessments and arrearages. Reiter replied to the letter August 28, complaining that the corrected policy had not been received, and inclosing a draft for $11.10 to cover its June, July and August assessments and dues. On September 2 the financier returned this draft, basing his action on the claim that Mrs. Tennen was ill when the money was sent.

It appears conclusively from the facts stated above that the insured agreed to the reduction of her benefit certificate to $2,000, and rerating on the basis of an age of fifty at the time it was issued in 1904. She asked for and received the national transfer card, and all the amounts thereafter paid or tendered for assessments were on the basis of the reduced amount at the increased age. She sent in her $3,000 certificate for correction, and, at no time after the receipt of the letter of April 22, made any protest against the terms and conditions upon which she was to be permitted to retain her membership. The case does not involve any element of fraud or duress; we must assume that Mrs. Tennen had misstated her age, and that the rerating was justified. In spite of the argument to the contrary, it seems beyond doubt that the minds of the parties met in a definite agreement that the amount of the insurance should be reduced to $2,000, and the assessments increased from $3 to $3.45.

It appears that no new certificate or corrected certificate was ever delivered to the insured, and it is upon this fact mainly that plaintiffs base their claim of a right to recover the amount of the original certificate. The trial court instructed the jury that Taube Tennen had acquiesced in the proposed change, but held as a matter of law that she did not surrender her rights under the $3,000 policy until a new policy for $2,000 was furnished her. It is the argument of plaintiffs that

they are entitled to recover on the $3,000 certificate because defendant did not perform its part of the agreement for a change, in that it failed to deliver to the insured a new policy for $2,000. This argument is grounded upon the proposition that no binding new contract was entered into. If this is so, it would follow that the insured did not lose her rights under the original contract. Plaintiffs recognize that a valid contract of insurance may be made orally, providing there is nothing in the constitution or by-laws of the insurer, or in the application, that makes a written contract, or countersigning by local officers, or actual delivery to or assent by the insured, a condition precedent to a valid obligation. Where there is such a condition precedent, the claim is that, until it is complied with, there can be no contract that binds the insurer. This is the correct rule and abundantly supported by the authorities. Giddings v. Insurance Co. 102 U. S. 108, 26 L. ed. 92; Sterling v. Head Camp, 28 Utah, 505, 80 Pac. 375; Wilcox v. Sovereign Camp, 76 Mo. App. 573; Kohen v. Mutual Reserve Fund Life Assn. 28 Fed. 705; Hiatt v. Fraternal Home, 99 Mo. App. 105; Louden v. Modern Brotherhood of America, 107 Minn. 12, 119 N. W. 425; McLendon v. Sovereign Camp, 106 Tenn. 695, 64 S. W. 36, 52 L.R.A. 444; Caywood v. Supreme Lodge, 171 Ind. 410, 86 N. E. 482, 23 L.R.A. (N.S.) 304, 131 Am. St. 253, 17 Ann. Cas. 503.

The by-laws of defendant provided that the benefit certificate shall become effective and be in force from and after the initiation of the member, the payment of one assessment and subordinate council dues, and upon the certificate being countersigned by the president and corresponding secretary of the subordinate council and by the member. It is further provided that after a benefit certificate is delivered to a member, a record of the delivery made, and the applicant has signed the roll book of the council, he shall be entitled to all the rights and privileges of the order.

It is true that the new certificate was not countersigned by the president or secretary of the local council or by Taube Tennen, nor was it delivered to her. If this were a case of the issuance of an original certificate to a new member, the above provisions of the by-laws would clearly be applicable, and there would be no contract that bound the defendant until the certificate was countersigned as provided and until it

was delivered to the member. But Taube Tennen was already a member of the order; she had been initiated, and had paid many assessments and subordinate council dues, and the conditions precedent to a binding certificate had been performed. The above provisions of the by-laws do not, in our opinion, apply to a change, modification or correction of a contract already in force. It was not necessary, under these by-laws or under any principle of law, that a new certificate be delivered to the insured in order to make defendant bound by the agreement, nor that it be countersigned or even issued. Indeed the terms of the agreement for a rerating and reduction in the amount of the insurance as found in the letters of the parties do not call for or seem to contemplate a new certificate, but merely a change in or correction of the old one. The original certificate was delivered to defendant "for correction," not for cancelation and the issuance of a new certificate in its place. We perceive no reason why this agreement was not binding upon defendant. It was founded upon a sufficient consideration. There is perhaps some confusion in the testimony as to whether the findings of the national committee was that Mrs. Tennen's age was fifty at the time of her original application, or that age at the time the committee heard the case, but it is clear enough that she was found to be fifty in 1904. At this age, the limit of insurance permitted was $2,000, and the rate was $3.45 on that amount, instead of $3 on $3,000. It was entirely competent for the parties to correct the mistake in the original certificate by a subsequent parol agreement, and this we think they did. Some reliance is placed by plaintiffs upon a by-law of defendant, providing that, when a member desires to reduce a certificate or change it in any way, he shall make application to the national secretary, pay a fee, forward the certificate, and that the first certificate shall remain in force until the new certificate is issued and delivered to the member. It is self-evident, in our opinion, that this provision has no application to the case we have here.

We do not hold that the old certificate was canceled, but do hold that there was a valid and binding agreement that it should be changed as to the amount, and as to the assessments to be paid. The result is not what defendant claims should follow, a dismissal of the action, and forcing the beneficiaries to bring a new action based on a new contract.

Plaintiffs' right to recover, if they have any such right, is still on the original certificate, but as modified by the agreement of the parties. Defendant was not therefore entitled to a dismissal, but was entitled to have the amount of the recovery based upon an insurance of $2,000, instead of $3,000. We see no difficulty, legal or otherwise, in a recovery in the present case on this basis.

2. The next important question is whether the insured had lost her rights by failure to pay assessments and dues. We have stated most of the facts regarding the payment and tender of assessments and dues in a former part of this opinion. Additional facts will be stated hereafter. Under the by-laws of the defendant the failure to pay an assessment on or before the last day of the month for which it was levied worked a suspension, but with the right of the member to be reinstated, at any time within sixty days, by paying all arrearages, providing he be in good health at the time of making the payment. It is to be noted that no examination by a physician was required, nor any certificate by the member as to his health. After sixty days, an examination and favorable report by a medical examiner was required to reinstate the member, together with the payment of all arrearages, and the assessment and dues for the month in which he reinstates.

It is first claimed that the assessment for June was not paid or tendered, and that this default is fatal to a recovery. It is probably true that no actual payment of the June assessment was made during that month, although the evidence leaves in some doubt the date of the remittance of $3.45 which we have said was sent early in July. This remittance was returned by the financier, not because it was received too late, or because the insured was not in good health, but on other grounds, most of which, if not all, were untenable. The check of July 20, to pay the June assessment, dues and exchange on checks sent, is a plain effort to "straighten these matters out," as requested by the financier, was cashed by that officer, and the money retained for twenty-one days, when he returned the amount of the assessment to the insured, on the sole ground that her remittance had not included payment for the July assessment. This was an untenable ground, as we read the by-laws. In addition to this payment, there was the check sent by Reiter on August 23, to apply generally on Mrs. Tennen's assessments and dues, verbal tenders

during June and July, according to plaintiffs' witnesses, and the draft
for $11.10 sent by Reiter on August 28, to cover assessments and dues
for June, July and August. This last remittance was in the exact
amount demanded by the financier, and was admittedly sufficient to pay
all arrearages and current assessments and dues. We think it appears
sufficiently, in spite of some claims to the contrary, that it was received
by the financier before the end of August, probably on the twenty-ninth.
It was returned September 2, for the stated reason that Mrs. Tennen
was not in good health at the time the remittance was made. We are of
the opinion that the evidence was sufficient to justify the jury in finding
either a payment or a valid tender of the June assessment. This is with-
out taking into consideration the remittance of August 28, or a remit-
tance on September 12, for the months of June, July, August and
September. No claim was made, in any of the financier's letters, that
Mrs. Tennen was suspended for failure to pay the July assessment.
Without going into further detail, we hold that the payments made and
those tendered orally in June and July at least made it for the jury
to say whether Mrs. Tennen was suspended on account of the July as-
sessment. As to the August assessment there can be no doubt that the
remittances on August 23 and 28 were sufficient tenders. We hold,
therefore, that the evidence justified the jury in finding that Mrs. Ten-
nen, though ill in August, was a member of the order in good standing
on September 1. Of course her illness did not affect her right to pay
the current month's assessment.

But it does not appear conclusively that the insured was not in de-
fault for failure to pay or tender the June assessment. We simply hold
that the jury might properly have found she was not so in default, and
we are not able to say that a contrary finding would not be supported
by the evidence. In this situation it becomes material to consider the
admission of certain evidence for the purpose of showing a waiver, and
the submission of this issue to the jury. The evidence referred to was
the testimony of the witness Juster as to the existence of a custom in
Herzel Council for the council to advance money from the general fund
to pay the assessment of a member who was in arrears for the current
assessment, and to permit the member to pay the advance made at any
time before the middle of the month. The admission of this evidence

was quite plainly error. Conceding that defendant order might, under certain circumstances, be bound by a custom of a local lodge, the evidence received falls far short of showing a custom that would be any evidence of a waiver of the by-law requiring assessments to be paid by the last day of the month. It is not pretended that Mrs. Tennen knew of any such custom, or had ever during the six years of her membership in Herzel Council availed herself of its benefit. There was no such custom in Montefiore Council. So many elements necessary to constitute a waiver are lacking that it is impossible to escape the conclusion that it was error to receive this evidence and error to permit the jury to decide that defendant had, by permitting this custom, waived prompt payment of the June or July assessment. We are unable to say that the jury did not decide the case on this issue, and hence the errors were prejudicial.

4. Mrs. Tennen neither paid nor tendered any assessments from October 1 to the date of her death, March 25. The only excuse for this, the only ground upon which it can be held that she did not thereby forfeit her rights under the certificate, is the claim that defendant, by refusing the tenders of August and September, and indicating that no assessments would be received until Mrs. Tennen had regained her health and been examined by a physician, rendered subsequent tenders not necessary to keep the certificate in force. In the letter of September 2, returning Mrs. Tennen's remittance of August 28, on the ground that she was then in bad health, the financier stated that "as the time limit for reinstatements without re-examination by the physician has now passed for June suspensions, it will be necessary for Mrs. Tennen to be re-examined after she is well again, and before she can be reinstated within the six months' limitation for such reinstatements, which expires Jan. 11, 1911." From this letter, as well as from the letters of August 11 and 24 and September 16, it is plain that the defendant took the definite position that Mrs. Tennen was suspended for June, and not legally reinstated within the sixty days' period, and that it was therefore necessary for her to be re-examined by the physician, presumably the physician of the local council, before she could be reinstated. It was made very plain that no assessments would be received until the insured had been so re-examined and reinstated for June. We have held that the evidence justified a finding that Mrs. Tennen paid or legally ten-

dered the June assessment. If such was the fact, defendant was demanding what it had no right to demand as a condition for receiving current assessments, that is, a re-examination of Mrs. Tennen by the physician of the council. It is quite clear, furthermore, that it was impossible for Mrs. Tennen to pass a medical examination at any time after October 1, and this fact was well known to defendant. The result is that the tender of assessments after October 1 would have been a useless act, as it was certain any such tender would be refused. This brings the case within the doctrine of Ibs v. Hartford Life Ins. Co. 121 Minn. 310, 141 N. W. 289, Ann. Cas. 1914C, 798; Kulberg v. National Council of Knights and Ladies of Security, 124 Minn. 437, 145 N. W. 120; and Marcus v. National Council of Knights and Ladies of Security, 127 Minn. 196, 149 N. W. 197. It should be noted, however, that the amount of any recovery by plaintiffs is subject to a deduction for all assessments and dues not actually paid. Kulberg v. National Council, supra; Marcus v. National Council, supra.

Our conclusion on the whole case is that defendant is not entitled to judgment, but that there should be a new trial on the lines we have attempted to draw in this opinion. There are some other questions argued by counsel, but, in view of the result, they do not require decision.

Order reversed and new trial granted.